## McGINNIS v. STATE.

CRIMINAL LAW—PRELIMINARY EXAMINATION—ROBBERY—INFORMATION—OBJECTIONS.

1. An objection that a defendant in a criminal case was not given a preliminary examination must be presented by a motion to quash if the facts appear on the record, otherwise by plea in abatement, and, if not so presented, is waived by a plea of not guilty.

2. The statute defining robbery is but a restatement of the offense at common law, and embraces all the common law elements of that offense.

3. An indictment or information for robbery is fatally defective which fails to state the ownership of the property alleged to have been taken, and charging the taking to have been "felonious" is not a substitute for an allegation of the ownership.

4. Only when the statute defining an offense fully, directly and expressly, without any uncertainty or ambiguity, sets forth all the elements necessary to constitute the offense intended to be punished, and states all the material facts and circumstances embraced in the definition of the offense, is it sufficient for an indictment or information to charge the offense in the language of the statute. Ingredients not entering into the statutory definition must be alleged.

5. An information or indictment for robbery failing to allege the ownership of the property taken, though the taking is alleged to have been felonious, is defective in substance, and the objection is not waived by not moving to quash, but can be raised by demurrer on the ground that the facts stated do not constitute an offense, and also by motion in arrest. (Potter, C. J., dissenting.)

[Decided October 7, 1907.]                           (91 Pac., 936.)

Error to the District Court, Converse County, Hon. Roderick N. Matson, Judge.

*Allen G. Fisher,* for plaintiff in error.

The information was fatally defective in a matter of substance, in failing to allege the ownership of the property said to have been taken by force and violence. The statute is virtually a re-enactment of the common law. A man is not guilty of taking his own property from another even·by violence; so there must be all the elements of larceny present to constitute robbery, and the ownership of the property taken must be alleged. (Rex v. Hull, 3 Car. & P., 409; Beale's Case, 281; Barnes v. State, 9 Tex. App., 128; Smedley v. State, 30 Tex., 214; People v. Vice, 21 Cal., 344; Com. v. Clifford, 8 Cush. (Mass.), 215; Sikes v. Com. (18 S. W., 902) ; Thompson v. Com., 18 S. W., 1022; People v. Hughes, 11 Utah, 100; State v. Wasson, 101 N. W. (Ia.), 1125; 2 Bishop's Cr. Proc., 1006; McLain's Cr. Law, Sec. 481; People v. Ammerman (Cal.), 50 Pac., 15; Brooks v. People, 49 N. Y., 436; State v. Dengal, 24 Wash., 49; State v. Morgan, 71 Pac. (Wash.), 723; Boles v. State, 58 Ark., 35; Hickey v. State, 23 Ind., 21; People v. Jones, 53 Cal., 58; Com. v. Brewitt, 82 Ky., 240; State v. Savage, 36 Ore., 191; State v. Rogers, 21 Mont., 143; Brown v. State, 33 Neb., 354; State v. Keeland, 90 Mo., 337; 2 East, P. C., p. 651; Long's Case, Cro. Eliz., 490; Commonwealth v. Morse, 14 Mass., 218; Houston v. Com., 87 Va., 257.)

Statutes defining robbery must be construed in the light of the common law, and the terms used are to be taken in

the sense understood at common law, unless such construc-
tion is contrary to the express terms of the statute. (Clark
& Marshall on Crimes (2d Ed.), 560; State v. Calhoun, 72
Ia., 432; Houston v. Com., 87 Va., 257.) And unless ex-
pressly so provided, such statute is not to be construed as
dispensing with the necessity that the property shall be
that of another. (Com. v. Clifford, 8 Cush., 215.) The
objection being one of substance can be raised by motion in
arrest.

*W. E. Mullen*, Attorney General, for the State.

The objection to the information on the ground that it
failed to allege the ownership of the property should have
been taken by motion to quash, and not having been so
raised the objection was waived by pleading not guilty. (R.
S. 1899, Sec. 5326; Wilbur v. State, 3 Wyo., 268; Miller
v. State, 3 Wyo., 657; Tway v. State, 7 Wyo., 74-78; State
v. McCraffery, 40 Pac., 64 (Mont.) The information is
sufficient under the statute defining robbery. (Anderson v.
State, 28 Ind., 23.)

The essential ingredients of the offense are the felonious
and forcible taking from the person of another of goods of
value, and an information in the language of the statute is
sufficient, although it contains no averment of ownership
of the property taken. (State v. Swafford, 71 Tenn., 162;
Clemens v. State, 92 Tenn., 282; State v. Corbes, 47 La.
Ann., 1587.)

It is a general rule that in an indictment for an offense
created by statute, it is sufficient to describe the offense in
the words of the statute; and if in any case the defendant
insists upon a greater particularity, it is for him to show
that from the obvious intention of the legislature, or the
known principles of law, the case falls within some excep-
tion to such general rule. (Wharton Cr. Law (6th Ed.),
364; People v. Hicks, 4 Pac., 1093 (Cal.); *In re* McDon-
ald, 4 Wyo., 155.) Under our statute the ownership of the
property taken is not made an ingredient of the offense, but

the taking must be felonious. The taking from another by violence of property belonging to the taker would probably not be a felony. The Wyoming statute is not a re-enactment of the common law definition of robbery, as contended.

Beard, Justice.

- An information was filed by the county and prosecuting attorney of Converse County against the plaintiff in error, William McGinnis, for the crime of robbery. The charge contained in the information being as follows: "That William McGinnis, late of the county aforesaid, on the 12th day of December, A. D. 1905, at and in the county aforesaid, the said William McGinniss did then and there unlawfully, forcibly and feloniously take from the person of Norvil Lawrence by violence the sum of fifty dollars, and, more, lawful money of the United States and of the value of fifty dollars, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Wyoming." To this information the defendant, McGinnis, pleaded "not guilty." On the trial the jury returned a verdict of guilty against him, and he moved in arrest of judgment on two grounds: First, because the defendant had not been given a preliminary examination by an examining magistrate before the information was filed in the district court; and second, because the facts stated in the information are not sufficient to constitute an offense. The motion was denied by the court, and the defendant sentenced to a term in the penitentiary, and he brings error.

The objection that the defendant had not been given a preliminary examination, if such was the fact, and if the case was one requiring it under the provisions of Sec. 5273, R. S. 1899, should have been presented by a motion to quash if the grounds appeared upon the face of the record; otherwise by plea in abatement; and not having been so taken was waived by the plea of not guilty, by the express terms of the statute. (Sec. 5326, R. S. 1899.)

The other objection that the facts stated in the information do not constitute an offense, is one of the grounds upon

which a motion in arrest of judgment may be granted (Sec. 5418, R. S. 1899), and presents the question of the sufficiency of the information. Robbery is defined by our statute as follows: "Whoever forcibly and feloniously takes from the person of another any article of value, by violence or by putting in fear, is guilty of robbery, and shall be imprisoned in the penitentiary not more than fourteen years." This is but a restatement of the offense at common law and embraces all of the elements of robbery at common law. Blackstone defines robbery to be "the felonious and forcible taking, from the person of another, of goods or money to any value, by violence or by putting him in fear." (2 Cooley's Blackstone (4th Ed.), Bk. 4, 242.) It is an aggravated form of larceny and there can be no robbery without larceny. Bishop states that the elements of the offense to be averred and proved are, (1) a larceny, (2) wherein the asportation is from the person, and is (3) effected by force or by putting in fear. (2 Bishop's New Crim. Procedure, Sec. 1001.) "The indictment should contain the allegations of simple larceny, with the added matter that makes the larceny robbery." (Id., Sec. 1002.) "Ownership must be alleged and proved precisely as in larceny." (Id., Sec. 1006; 4 Cur. Law, 1317.)

That the ownership of the property alleged to have been taken must be stated in an indictment or information for robbery has been generally held by the courts of last resort in those states where the question has arisen. In a recent case in the supreme court of Iowa, under a statute which provides: "If any person, with force or violence, or by putting in fear, steal and take from the person of another any property that is the subject of larceny, he is guilty of robbery," it was held that the offense thus created by the statute embraces all of the elements of the crime under the common law. And that robbery is but an aggravated form of larceny both at common law and under the statute; and as larceny is defined to be the felonious taking of the property of another, an allegation of ownership is necessary in an indictment for

robbery.   The indictment in that case charged that the defendant assaulted Thomas Malone, "and, with force and violence, wilfully and feloniously did steal, take and carry away from the person" of said Malone the sum of $75.  The ownership of the property was not otherwise alleged in the indictment.  It was contended that the indictment was good because it charged that the defendant did "steal from the person of Malone."  But the court said:  "It is true we have held that the word 'steal,' used in the indictment, means a felonious taking.  (State v. Griffin, 79 Ia., 568.) But we have never gone beyond this, and cannot, because of the statute already referred to."  It was held that under the common law it is necessary to allege and prove ownership precisely as in larceny and that such is the rule where it is a statutory crime.  (State v. Wasson, 126 Ia., 320.) In People v. Vice, 21 Cal., 344, the indictment was for robbery and charged that the defendant "did violently and feloniously take money of the following description * * * from the person of another, to-wit: From the person of Jesse A. Brandy by force, threats," etc.  The indictment was not demurred to, but after a verdict of guilty defendant moved in arrest of judgment on the ground that the ownership of the property was not stated in the indictment, which motion was denied.  On appeal the supreme court held the indictment fatally defective for the want of such allegation and reversed the judgment.  And in People v. Jones, 53 Cal., 58, it was held that an indictment for robbery must aver every fact necessary to constitute larceny, and more. And in People v. Ammerman, 118 Cal., 23, the defendant was informed against for robbery and pleaded former acquittal, once in jeopardy and not guilty.  The opinion recites that "an information against the defendant for the crime of robbery involving the same transaction had previously been filed, and under it defendant was arraigned, and pleaded not guilty; a jury was impaneled, the information was read and the plea stated.  After the jury was sworn, and before any evidence was offered, upon motion

of the district attorney the information was dismissed and the defendant discharged. The ground for the motion was that the information did not allege the ownership of the property stolen, which was in fact true." It was held that the first information was invalid because it failed to allege the ownership of the property taken, and there was no jeopardy; and that the court did not err in instructing the jury to find for the people upon the plea of former acquittal and once in jeopardy. The California cases on the question are cited and reviewed in a later case by the court of appeals of California (People v. Cleary, 81 Pac., 753), and it was again held that an information for robbery, which failed to allege the ownership of the property, did not charge an offense.

We find nothing in the case of *In re* Myrtle, Cal. App., 84 Pac., 335, in conflict with the rule as stated in the other California cases. It is there said: "In the Ammerman case the taking of the property might have been for some other purpose, for the language of the information does not intimate that the object was to steal it any more than the mere naming the crime 'robbery' might tend to indicate a theft, and there being no allegation of ownership and no words used by which any inference could be drawn of ownership in one other than the defendant, except the mere possession Richard Johnson had of the money taken by Ammerman at the time. We think the decision in that case was correct." Further on in the opinion in commenting on the case of People v. Cleary, *supra,* it is said: "We reiterate all that was said in this opinion of People v. Cleary as applied to the facts in that case and in all cases of like character, where there is a plea of not guilty and a motion in arrest of judgment, and we still maintain that in all cases of robbery it must appear either from the language of the information or the plea of the defendant that the property taken is not the property of the defendant." If the information charged no offense it could not be plead in bar of a subsequent prosecution. (State v. Brown, 47 O. St., 102.) The

statute of Arkansas is in substantially the same language as ours, and the supreme court of that state held an indictment for robbery insufficient in failing to allege the ownership of the money charged to have been taken. The court said: "That allegation is found in all the common law precedents of indictments for robbery, and we have been unable to find any adjudged case in which it has been dispensed with under a statute similar to ours." (Bales v. State, 58 Ark., 35, and cases cited in the opinion.) It is stated in 18 Enc. P. & P., 1233: "It is very generally held that a conviction for larceny may be had upon an indictment for robbery"; and authorities from many states are cited in support of the text. Without extending this opinion by further quotations from decisions we deem it sufficient to cite the following cases in each of which it is directly held that an indictment or information for robbery is fatally defective which fails to allege the ownership of the property alleged- to have been taken. (State v. Dengal, 24 Wash., 49; State v. Morgan, 31 Wash., 226 (71 Pac., 723); Smedley v. State, 30 Tex., 214; State v. Lawler, 130 Mo., 366; Commonwealth v. Clifford, 8 Cush. (62 Mass.), 215.) We have found the contrary held in but two states (Oregon and Tennessee). In State v. Dilley, 15 Ore., 70, the indictment followed the form prescribed by statute for an indictment for robbery, and the court said that the statute provided in express terms what should be a sufficient statement in an indictment for robbery, being armed with a dangerous weapon, and it was upon that ground alone that the indictment was held to be sufficient, while admitting that but for the statute it would have been defective. In Clemons v. State, 92 Tenn., 282, the indictment was held sufficient being in the language of the statute, and cites State v. Swofford, 3 Lea (Tenn.), 162, but no other authority in support of the decision. In the latter case the ownership of the property was alleged to be in the person robbed.

It is contended that as the information in the case at bar charges a felonious taking, that implies a taking of

the property of another than the defendant and for that reason the information should be held sufficient. We think this contention cannot be sustained. The crime of robbery under the statute is a felony and it is proper, if not necessary, to so charge it; and the word feloniously as used in the information characterizes the acts charged in the information as being done with a criminal intent, but cannot be taken as a substitute for or to supply the place of an allegation of a fact which is an essential element to constitute the offense. Indeed, in most of the cases above cited the indictment or information contained the word "feloniously." Substantially the same question was presented in State v. Wasson, *supra*. And in State v. Morgan, *supra*, it is said: "The words 'did feloniously steal and take,' are no more effective to charge ownership of property than the words 'did feloniously take.'" Nor is it sufficient in all cases to charge the offense in the language of the statute. To be sufficient, "the words of the statute must fully, directly, and expressly, without any uncertainty or ambiguity, set forth all of the elecents necessary to constitute the offense intended to be punished, and must state all the material facts and circumstances embraced in the definition of the offense. Ingredients which do not enter into the statutory definition must be added." (22 Cyc., 340, and authorities cited in notes.)

We need notice but one other point contended for by counsel for defendant in error, viz.: that this objection to the information was waived by a failure to move to quash. This contention can only be based upon the fact that the information is defective. For, if, as contended, it is sufficient to charge the offense in the language of the statute, which includes the word "feloniously," then there is no defect in the information either in substance, form or in the manner in which the offense is charged, and nothing upon which a motion to quash could be based. But as we think the information is fatally defective in substance and that the facts therein stated do not constitute an offense, the objection

could be made and the question raised by motion in arrest of judgment. (Sec. 5418, R: S. 1899.)

In United States v. McNemara, 26 Fed Cases, No. 15701, an indictment for forcibly taking bank-notes from another, the court on motion arrested the judgment because it was not stated in the indictment, whose property the bank-notes were. And in State ex rel. Conway v. Blake, 5 Wyo., 107, at 123 this court said: "The only matter which has not been passed upon herein raised on the motion for arrest of judgment is the sufficiency of the indictment. No claim was made upon the argument or in the brief that the indictment does not charge an offense, and an examination of it convinces us that it is good and would support a conviction of murder in any degree." Thus clearly indicating that the sufficiency of the indictment to charge an offense may be raised by a motion in arrest. (See also Benjamin v. State, 121 Ala., 26; U. S. v. Hannon, 45 Fed.; 414; Strickland v. State, 19 Tex. App., 518.)

Under our code of criminal procedure the defendant may demur to the information when the facts therein stated do not constitute an offense, but he does not waive that objection by a failure to do so, and may raise that question for the first time by motion in arrest. That is not, however, one of the grounds for a motion to quash, and we think it was not intended that a defect which the statute says may be taken advantage of by demurrer or motion in arrest, may also be taken by motion to quash. The motion to quash reaches defects in the form of the information, and in the manner in which the offense is charged, but does not reach the substance. If the facts stated constitute an offense, but are imperfectly stated, a motion to quash is the proper remedy; but if the facts stated do not constitute an offense, it should be challenged by demurrer or it may be done by motion in arrest. Otherwise the provision of the statute authorizing a demurrer or motion in arrest on that ground would be superfluous. If a general demurrer to the information in this case should have been sustained, then it

seems clear that the motion in arrest on the ground that the facts stated in the information do not constitue an offense should have been sustained. In McCarthy v. Territory, 1 Wyo., 313, a general demurrer was interposed to an indictment which was overruled and the defendant was tried and convicted, and after motions for a new trial and in arrest of judgment, the defendant was sentenced. On appeal the indictment was held bad for uncertainty and indefiniteness in not setting out the facts constituting the offense. It is there stated (p. 315) that "the general rule relating to indictments is, that they should set out affirmatively sufficient to constitute in themselves allegations to make out the offense charged, and leave nothing to be supplied by inference or proof." In the case at bar there is no direct allegation of the ownership of the property alleged to have been taken, but that fact—an essential element to constitute the offense—is left entirely to inference or to be supplied by proof. An examination of the statutes under which the decision in the McCarthy case was rendered discloses that the grounds for a motion to quash, plea in abatement and demurrer were the same as at present; and also provided, as does our present statute, that "the accused shall be taken to have waived all defects which may be excepted to by a motion to quash, or plea in abatement, by demurring to an indictment, or by pleading in bar or not guilty." (Secs. 100, 101, 102, 103 and 105, p. 484, Laws of Wyoming 1869.) That case appears to be decisive of the question now under consideration. The statute having provided for what causes a demurrer or motion in arrest will lie, excluded the idea that such objections should be otherwise raised. (State v. Baugham, 111 Ia., 71; State v. Tough, 12 N. Dak., 425.) The present case differs from Wilber v. Territory, 3 Wyo., 268. There the charge was larceny as bailee, and it was alleged that the defendant was the bailee of the goods; but the facts constituting the bailment were not stated.

The effect of sustaining a motion in arrest of judgment is clearly defined in the statute. (Sec. 5420, R. S. 1899.)

It does not necessarily discharge the defendant, but if from the evidence on the trial there shall be sufficient reason to believe him guilty of an offense the court shall order him to enter into a recognizance to appear at the first day of the next term of the court. The information being fatally defective in failing to allege the ownership of the money alleged to have been taken did not state facts constituting an offense. The district court, therefore, erred in denying the motion in arrest of judgment; and for that error the judgment is reversed and the case remanded to the district court with directions to set aside and vacate the judgment heretofore entered, to sustain the motion in arrest of judgment, and for further proceedings according to law.

*Reversed and remanded.*

Scott, J., concurs.

Potter, C. J., dissents.

---

Potter, Chief Justice (dissenting).

I am unable to agree with the other members of the court in this case. In my opinion the plaintiff in error is not in a position to question the sufficiency of the information for its failure to specifically allege the ownership of the property taken. As against the motion in arrest, as well as the objection to the introduction of evidence, the information is, in my judgment, clearly sufficient. Though it may follow, as a mere legal conclusion, the allegations of the information unquestionably, I think, negative ownership of the property on the part of the defendant, and the defect in failing to make the allegation in that respect more specific is one of uncertainty or indefiniteness which should have been objected to by a motion to quash, under our statute, and, no such motion having been made, the objection was waived by the plea of not guilty. It is true that an allegation of ownership of the property taken is essential at common law in an indictment for robbery, and I am willing to concede that such an allegation to render the

information good as against a motion to quash ought to be made under our statute, whereby the crime of robbery is defined substantially as it is defined by the rule of the common law. An allegation of ownership, however, in an indictment for robbery was not required because of any supposed materiality of the fact of ownership by any particular person, for the ownership could be laid in the person robbed or in some third person. The object of the requirement was that it should appear by the indictment that the property was not that of the defendant, since the crime of robbery would not be committed if one took his own property from another, though by force or violence or by putting in fear. The essential fact, therefore, embraced in the allegation of ownership in a robbery charge was and always has been the absence of ownership or right to the property on the part of the defendant.

It is true that at common law if ownership was not proved as alleged, it might constitute a fatal variance, but the effect of variance in that as well as other particulars has been greatly modified by our statute, as well as by the statutes of many of the states. All respect is due and conceded to the approved language of the common law in alleging ownership, but apart from its virtue of particularity it has no greater value than other appropriate words having the same effect and which clearly preclude any right to the property on the part of the defendant. At common law, and, no doubt, by express statute in several of our states, a criminal indictment or information is required to state all the material facts and circumstances comprised in the definition of the offense sought to be charged positively, and with clearness and certainty; and in charging the offense all the essential facts must be stated with particularity and not by way of legal conclusion.

Prior to the enactment of statutes limiting the same, a demurrer and a motion in arrest at common law might be made for want of sufficiency in the indictment respecting the time, place, or offense material to support the charge,

as well as on the ground that no offense was charged.
Subsequent legislation in England, as well as in many if
not most of the states of this Union, have restricted the
application, especially of a motion in arrest and, in some
respects, in many of the states of a demurrer; but it is
apparent that the statutes of the various states on this
subject differ widely.   No state, I apprehend, has gone
further, and few seem to have gone so far, than our own
state in confining the objections for which a demurrer and
motion in arrest may be presented.   In considering the
question in this case, therefore, decisions from other states
may not be controlling or even persuasive as to the char-
acter of the allegation of ownership in an indictment for
robbery or the effect of a lack of certainty therein, by
reason of the substantial difference between the statutes of
such other states and our own governing the manner of
raising objections to an indictment or information.   In
several states a motion to quash seems to be unknown, or if
allowed at all goes merely to some defect in the proceed-
ings outside of the indictment, and in others it seems to
be provided that even formal defects may be objected to
either by a motion to quash or a demurrer.   Hence, though
it may be held in another state under a different statute
that the absence of a specific allegation of ownership con-
stitutes a fatal defect, it does not follow that it was intended
to be held that the allegation was so much one of substance
that without it a crime would not be alleged, but rather,
and, I think, generally in most of the cases, that the defect
has been held to be a fatal one because assailed by a de-
murrer or perhaps by a motion in arrest under a statute
authorizing such a pleading or motion for less important
causes than are made ground for the same by our statute.

It should be remembered that the precise technicalities
of the common law in respect to the framing of a criminal
indictment were adopted and required at a period when a
defendant was not given as a right the benefit of counsel
and was not permitted to testify in his own behalf.   The

object intended to be attained by the certainty required in
the allegation of an indictment was, first, that the accused
should be furnished with a description of the charge suf-
ficiently particular as to the essential facts to enable him to
make his defense, and to furnish him, in case of his con-
viction or acquittal, protection against a further prosecution
for the same act; and, second, that the court might be
informed of the facts alleged, so that it might decide
whether they were sufficient in law to support the convic-
tion if one should be had.    Therefore, it was held that
facts and not conclusions of law, and the intent when
necessary, should be set forth with particularity as to time,
place and circumstances.    But statutes have been enacted
not only in England, but generally in our own country,
rendering either unnecessary or unimportant many of the
technical requirements of the common law in respect to
criminal pleadings, which have been found to serve no use-
ful purpose, and the only apparent benefit whereof was the
prevention of the conviction of the guilty without offering
any reciprocal protection to the innocent.

In discussing the principle that every material fact en-
tering into an offense must be alleged with reasonable
clearness, directness and precision, to the end that the in-
dictment shall fully inform the accused of the exact charge
against him, it was said by the court in Maine: "It·is
plain, however, that much of the usual tautology and
wearisome prolixity which characterized indictments in the
early period of criminal procedure can be safely avoided
without any infringement of this sacred right of the citizen.
It is the policy of our modern courts to encourage a more
rational system of pleading, with greater directness and
simplicity, with less verbiage and needless repetition."
(State v. Perry, 86 Me., 427 (41 Am. St., 564.)  In con-
sidering a demurrer to an indictment in a recent case in
the federal court of Georgia, the learned district judge
said: "It is not impossible that at certain stages in the
evolution of our criminal law, the arguments so ably ad-

vanced by the prisoner's counsel would have been regarded as controlling on the construction of an ordinary criminal indictment. There has, however, been a great advance, not only in criminal pleading, but in the interpretation placed on criminal statutes. This has been accomplished with the beneficial purpose on the part of the government to bring persons accused of crime to trial on the merits before a jury of their peers." (U. S. v. Green, 146 Fed., 778.) In 1 Bishop on Criminal Procedure (2d Ed.), Section, 322, the author states: "There has been considerable modern legislation intended to remove old · technical absurdities in the indictment, yet aside from these there is really no great change; though the courts do not now give so attentive an ear as they once did to objections resting in no substantial reason." And even at common law the verdict was held to cure some defects the same as in civil cases, and the rule is stated in Bishop's New Criminal Procedure as follows: "It is that though a matter either of form or of substance is omitted from the allegation or alleged imperfectly, yet if under the pleadings the proof of it was essential to the finding, it must be presumed after verdict to have been proved, and the party cannot now for the first time object to what has wrought him no harm." (Bish. Cr. Pr., Sec 707a.)

In a recent case decided by the United State circuit court of appeals, Eighth circuit, the court said: "Learned counsel for defendant, in arguing the legal sufficiency of the present indictment, urges us to recognize and apply the criterion of the hornbooks of the law that certainty to a common intent is not sufficient, but that a high degree of certainty in every particular is required. This was anciently the fixed rule of criminal pleading, but of late years its rigidity ·has been somewhat relaxed. The well known canons· of construction employed to ascertain the meaning of written instruments should not be ignored to secure mere technical accuracy, when that is unnecessary for the legitimate protection of the accused. Language should not be strained

either to convict or to acquit; it should receive a reasonable
and fair interpretation to accomplish, on the one hand, the
indispensable purpose of fairly apprising the accused of
the charge against him, so that he may intelligently prepare
to meet it, and be enabled to make use of an acquittal or
conviction to protect himself against another charge for
the same offense; and, on the other hand, to enable the
government without unnecessary embarrassment to effectu-
ally enforce its laws and bring the guilty to punishment.
We must so far as possible, consistently with insuring an
accused person a fair and impartial trial, guaranteed to him
by the constitution and laws, disregard form, imperfection
of statement, and unimportant defects, which do not rea-
sonably tend to the prejudice of the accused. This we are
commanded to do by positive law (Sec. 1025, Rev. Stat.),
as well as by repeated admonitions of the supreme court."
(Clement v. United States, 149 Fed., 305.) The statute
referred to in the above quotation is not different in sub-
stance or effect from the statute of our own state with
reference to imperfections in an indictment or an informa-
tion. In Rosen v. United States, 161 U. S., 30, Mr. Justice
Harlan, delivering the opinion of the court, said: "The
defendant is informed of the nature and cause of the accu-
sation against him if the indictment contains such descrip-
tion of the offense charged as will enable him to make his
defense and to plead the judgment in bar of any further
prosecution for the same offense."

With these introductory observations intended to show
the modern tendency, in a general way, in the interpretation
of criminal pleadings, and bearing in mind the object to be
attained by the rules affecting the allegations of an indict-
ment, we may the more intelligently approach a considera-
tion of our statutory provisions upon the subject. In the
first place, there is a general declaration that no indictment
shall be deemed invalid, nor shall the trial, judgment or
other proceedings be stayed, arrested or in any manner
affected, "first, by the omission of the words 'with force

and arms' or any words of similar import; or, second, by omitting to charge any offense to have been committed contrary to a statute or statutes; or, third, for the omission of the words, 'as appears by the record'; nor for omitting to state the time at which the offense was committed, in any case where the time is not of the essence of the offense; nor for stating the time imperfectly; nor for the want of a statement of the value or price of any matter or thing or the amount of damage or injury in any case where the value or price or injury is not of the essence of the offense; nor for the want of an allegation of the time and place of any material fact, when time and place have once been stated in the indictment; nor that dates and numbers are represented by figures; * * * nor for any surplusage or repugnant allegation where there is sufficient matter alleged to indicate the crime or person charged; nor for the want of the averment of any matter not necessary to be proved; *nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits.*" (Rev. Stat. 1899, Sec. 5301.) Section 5302 provides as to variance as follows: "Whenever, on the trial of any indictment for any offense, there shall appear to be any variance between the statement in such indictment and the evidence offered in proof thereof in the Christian name or surname, or both the Christian name and surname, or other description whatever of any person whomsoever, therein named or described, or in the name or description of any matter or thing whatsoever therein named or described, such variance shall not be deemed ground for an acquittal of the defendant, unless the court before which the trial shall be had shall find that such variance is material to the merits of the case or may be prejudicial to the defendant."

By Section 5307 it is declared that where it is necessary to allege an intent to defraud, it shall be sufficient to allege such intent generally without alleging an intent to defraud any particular person; and that the proof need only show

the doing of the act charged with the intent to defraud.
In several other particulars, unnecessary to specify, the
technicalities of the common law have been removed.  These
statutes, in their application to this case, are important as
revealing the legislative purpose to avoid the mistrial of a
cause, or an acquittal merely because of some matter more
or less technical not affecting the substantial rights of the
accused.  All provisions of law relating to indictments are
expressly made to apply to informations and prosecutions
and proceedings thereon.  (Rev. Stat. 1899, Sec. 5317.)

While discarding many of the technical refinements of the
early criminal procedure, the legislature has not been un-
mindful of the rights of an accused, but has granted him
certain privileges not allowed at common law, which fur-
nish a much more substantial protection to one charged with
crime than many of the requirements formerly but not now
regarded as essential.  Among such substantial benefits
now conferred upon an accused may be mentioned the right
to be represented by counsel, and if unable to employ
counsel to have counsel appointed to defend him at public
expense; the right to testify under oath in his own behalf,
or at his own election to make a statement without being
sworn, and the right to have witnesses summoned to testify
in his defense at public expense.

Under our criminal procedure a copy of the indictment
or information for felony must be delivered to the de-
fendant, if in jail, or, if on bail, to him or his attorney, and
without his consent he cannot be required to answer an
indictment or information charging felony until at least
one day shall have elapsed after the service of a copy
thereof upon him as aforesaid.  Before arraignment it is
also required that he shall be assigned counsel at his re-
quest, if he has not been able to engage any; and thereupon
it is required that he be allowed a reasonable time to ex-
amine the indictment or information and prepare exceptions
thereto.  (Rev. Stat. 1899, Secs. 5318-5320.)  Thus rea-
sonable opportunity is afforded by the statute to a defendant

before being required to plead to the information to know the nature and character of the charge against him as therein set forth.

The statute then proceeds to prescribe the various methods for raising objections to an indictment or information. The three methods so prescribed are, first, a motion to quash; second, a plea in abatement; third, a demurrer. (Id., Sec. 5321.) "A motion to quash may be made in all cases where there is a defect apparent upon the face of the record, including defects in form of the indictment, or in the manner in which the offense is charged." (Id., Sec. 5322.) "A plea in abatement may be made when there is a defect in the record, which is shown by facts extrinsic thereto." (Id., Sec. 5323.) "The accused may demur when the facts stated in the indictment do not constitute an offense punishable by the laws of this state, or when the intent is not alleged, when proof of it is necessary to make out the offense charged." (Id., Sec. 5324.) It is then provided: "The accused shall be taken to have waived all defects which may be excepted to by a motion to quash or a plea in abatement, by demurring to an indictment or information, or by pleading in bar, or not guilty." (Id., Sec. 5326.) A motion in arrest of judgment, after verdict, may be granted only for either of the following causes: (1) That the court had no jurisdiction to try the case; (2) that the facts stated in the indictment or information do not constitute an offense. (Id., Sec. 5418.) Section 5419 expressly provides that no judgment can be arrested for a defect in form.

From the provisions above mentioned, it is clear that the statutes of this state have made material changes in criminal procedure in respect to the manner of excepting to an indictment. At common law, and that is the rule under the statutes of a majority of the states, perhaps, a motion to quash is addressed to the sound discretion of the court, and, if refused, is not a proper subject of exception. Such a motion, in other words, was not regarded as one of right,

but was an appeal to judicial discretion. Originally, there-fore, and, as stated by Mr. Bishop, in accord with the general practice in a large part of the states, the decision of the presiding judge on such a motion is not open for revisal by a higher court. (1 Archbold's Crim. Pr. & Pl., Waterman's Notes, 336, 337, Note 1; 1 Bish. New Crim. Pr., Sec. 761.) It is said, however, by Mr. Bishop, in the section above cited, that "In some states, in some circumstances, and in some conditions of the statutory law," a decision upon such a motion is subject to exception and reversal for error. On the other hand, at common law, and apparently in a majority of the states, a demurrer to an indictment reaches every defect in the structure thereof, whether in matter of form or substance, especially the form and substance of the part of the indictment stating the accusation. I suppose there can be no question but that under our statute an erroneous refusal to sustain a motion to quash is reviewable on error; but no doubt where the objection is merely to some matter of form in no way affecting the substantial rights of the defendant a decision upon the motion would be held to rest largely in the sound discretion of the court, and the judgment would not be reversed on error in that regard, unless it was apparent that there had been an abuse of discretion and that thereby the defendant had suffered some substantial prejudice in making his defense. Our statute, however, in prescribing the grounds for a motion to quash has gone much further than the statutes of most of the states, judging them by judicial decisions. Such grounds are not restricted to defects in the record outside of the indictment, nor to defects in the form of the indictment, but the motion may be made for any defect in the manner of charging the offense; while a demurrer is only permissible when the facts stated in the indictment do not constitute an offense punishable by the laws of the state. I am of the opinion that in thus adding to the causes for a motion to quash, and in restricting the common law grounds for a demurrer,

it was intended that mere uncertainty, indefiniteness or imperfection of statement in charging the offense should be objected to by a motion to quash and should not be subject to demurrer; and that the statute in this respect tends to explain what is meant in stating as a ground for a motion in arrest that it should be granted when the facts stated do not constitute an offense. As the ground so stated is in practically the same language as the statement of the cause for a demurrer, and as a failure to make a motion to quash is declared to waive all defects which may be excepted to by such a motion by demurring or by a plea of not guilty, or by pleading in bar, it is manifest to my mind that a motion in arrest under our statute will not lie for any cause nor for any objection to an information or an indictment which may be reached by a motion to quash; and, therefore, uncertainty in stating the offense or any material fact essential to the charge, such, for instance, as a statement of a fact by way of a legal conclusion, are not grounds for a motion in arrest. The purpose of the statute is more clearly shown by the provisions of Section 5325, which provides that when a motion to quash or plea in abatement is sustained the accused may be committed, or held to bail, for his appearance at the next term of court, unless the grounds on which the indictment was quashed are such that a new indictment cannot cure the defect.

Coming now to the information in this case, we find that it is charged that the defendant did "unlawfully, forcibly and feloniously take from the person of Norvil Lawrence by violence the sum of fifty dollars and more, lawful money of the United States, and of the value of fifty dollars, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Wyoming."

The section of our statute defining robbery is embraced in the chapter entitled "Crimes Against the Person," while the sections defining larceny and burglary and the like are found in another chapter entitled "Crimes Against Prop-

erty." This follows the arrangement of the original act of 1890 defining crimes. By the statute, robbery is defined as follows: "Whoever, forcibly and feloniously takes from the person of another any article of value, by violence or by putting in fear, is guilty of robbery, and shall be imprisoned in the penitentiary not more than fourteen years." It is to be observed that the information charges the crime in the precise language of the statute. It will not be contended, I apprehend, that the statute does not state an offense punishable under the laws of the state. If it is robbery to "forcibly and feloniously take from the person of another any article of value, by violence, or by putting in fear" (and the statute so declares), then it is impossible, in my mind, to say with much show of reason that the offense is not charged in this information, which says that the defendant did "feloniously, forcibly and unlawfully take from the person" of the person named "by violence, the sum of fifty dollars, lawful money," etc.

It is insisted, and I willingly concede, that the statute does not intend by its definition of the crime to make one guilty of robbery who takes by violence, from the person of another, his own property. But that conclusion arises from the use in the statute of the word "feloniously." Bearing in mind that such an act would not constitute robbery at common law, we observe that it was never deemed necessary in the common law definition to say that one who takes the property of another by violence shall be guilty of robbery, but it was deemed sufficient in defining the crime by the rule of the common law to use the word "feloniously" in describing the act of taking in addition to the words embracing violence or the putting in fear. In other words, the common law definition was deemed sufficient to exclude the idea that the property taken belonged to the one who committed the act. By the same construction applied to our own statute, the definition of the crime excludes ownership by the defendant of the property taken.

The same sensible and reasonable construction applied to the information in this case just as thoroughly and con-

clusively excludes the ownership of the property by the defendant. If it be true that the defendant "unlawfully and feloniously" took the property, then it cannot be true that the property belonged to him; and it is entirely immaterial whether the property belonged to the person robbed or to some third person; and it is very doubtful, to say the least, whether, had ownership been alleged in the person robbed, the proof of ownership by another would be a sufficient variance to have affected the substantial rights of the defendant. In my opinion, therefore, there is not in this information a total omission of an allegation that the property did not belong to the defendant. It may be a legal conclusion, or the charge may be said to be uncertain as to ownership or the defect may be one of indefiniteness, but by no reasonable construction of the information is it possible to say that, notwithstanding its allegations, the defendant may have owned the property. If he owned the property taken, then he did not commit the act feloniously or unlawfully, and conversely, if he committed the act unlawfully and feloniously, as alleged, then he did not own the property. I am aware that statements may be found in some judicial decisions to the effect that under an indictment making a similar allegation the defendant might have committed every act charged and yet not be guilty of robbery. I notice such a remark in the opinion in State v. Dengel (Wash.), 63 Pac., 1104. The information in that case followed substantially the language of the statute defining the crime. I cannot agree with the statement that "literally, the defendant may have committed every act charged in the information, and yet not be guilty of robbery." If the defendant feloniously took the property under the circumstances alleged, then that act constituted robbery, and, though defendant might have had the right to seasonably object to the information in the proper statutory manner for the absence of a specific allegation of ownership, it is going too far to·say that he could have done the act charged and yet be guiltless·of the crime of

robbery. Such a statement under the common law procedure would no doubt have been substantially, though, even then not literally, true. Since at common law the indictment was required to contain the allegation of ownership, it might be said that an indictment not embracing the allegation would not show defendant's guilt, but I seriously doubt that it would have been correct to say that defendant could have committed every act charged and yet not be guilty. It would be equivalent to saying that at common law robbery is the forcible and felonious taking of personal property of value from the person of another, and yet if one did forcibly and feloniously take such property from the person of another he would not be guilty of robbery. The statement clearly involves an absurdity on its face.

The statute of Washington requires an information to be "direct and certain" as it regards (1) the party charged, (2) the crime charged, (3) the particular circumstances of the crime charged, when they are necessary to constitute a complete crime. A motion to quash is not one of the pleadings allowed. The only method of objecting to the structure of an indictment is by demurrer, and it lies, among other grounds, when the indictment does not substantially conform to the requirements of the code. It lies, therefore, in that state for uncertainty and when the charge as to any particular circumstance is not "direct and certain." Very different from our statute.

The general rule is that as to a purely statutory offense it is sufficient to charge it substantially in the language of the statute. But it is also generally held that that rule has no application as to a common law crime where the statute has defined it in generic terms, but that in such case the information or indictment would be insufficient in merely following the statute. Where, however, the statute in defining a common law crime defines it by stating all the material facts which go to make up the crime, then it is generally held sufficient, at least as against a motion in arrest, to charge the crime in the language of the statute.

Where the crime of robbery was defined as follows: "Every person who shall be convicted of feloniously taking the property of another from his person or in his presence, and against his will, by violence to his person or by putting him in fear of some immediate injury to his person, shall be adjudged guilty of robbery in the first degree," it was held in Kansas that the statute defined the offense, not in its generic terms, but by specifically stating the facts which constitute the offense. (State v. Seely, 69 Pac., 163.)

So far I have discussed the question from the view point that since the statute states that the facts alleged in the information shall constitute robbery, it must be held that the information itself charges that crime as against a motion in arrest. I am willing, however, to concede that in the interest of good pleading the information ought to be more direct and certain as to the ownership of the property, but I maintain that the defect in that particular could only be reached by a motion to quash, and no such motion having been made the defect was waived.

Is it possible to maintain that the defendant, upon an inspection of this information, was not thereby informed of the nature and cause of the accusation against him so as to enable him to prepare his defense? Or, is it possible to maintain that it would not furnish him a sufficient protection against a subsequent prosecution for the same offense? Or, can it be reasonably maintained that the court would not be able, upon reading the allegations, to determine whether or not a crime and what crime is charged? To each of these inquiries I think the answer must be in each case that no such position can be maintained.

Let us now examine the meaning and effect, as determined by judicial authority, of the word "felonious." While that is a technical word, it has always been held to imply a criminal intent, and, as descriptive of the act charged that it was done with intent to commit a crime, or, as said in a Montana case: "It means that the act was done with the mind bent on that which is wrong, or, with

(4)

a guilty mind." (State v. Rechnitz, 20 Mont., 488; 52 Pac., 264.) Mr. Circuit Justice Grier, in the federal court of Pennsylvania, said: "The epithet 'felonious' has reference to the intention, which must be *animo furandi* for the purpose of stealing or appropriating the thing taken." That language was used in charging a jury in a robbery case after giving the definition of robbery at common law. (U. S. v. Smith, 27 Fed. Cas. No. 16318.) In Bise v. United States, 144 Fed., 374, Judge Van Devanter, in delivering the opinion of the court of appeals, Eighth circuit, said with reference to an indictment charging the receiving of stolen goods that, "though the statute did not in terms make it an element of the crime that the stolen property should be received without the consent of the owner, or with intent to deprive him of its use and benefit, yet the statute was not designed to punish one who with lawful intent received stolen property, or where he receives it with the consent of the owner; but he further said that the words 'unlawfully, feloniously,' as used in the indictment, mean that the act which they characterize proceeded from a criminal intent and evil purpose and thus exclude all color of right and excuse for the act." In Indiana, in a robbery case, it was contended that the information was insufficient because it did not allege that the defendant had the present ability to commit a violent injury on the person of the prosecuting witness and, therefore, that the allegation as to an assault was not sufficient. The court said that the allegation as to assault was unnecessary and might be rejected without impairing the pleading, and that the offense of robbery is so described in the criminal code that it may be sufficiently charged in the language of the statute, or in equivalent terms; and further, "It consists in forcibly and feloniously taking from the person of another an article of value by violence, or by putting in fear." The court, it is true, also said that a charge that a defendant forcibly and feloniously took from the person of another an article of value, describing it, and stating its value, and the name of

its owner, by violence, would in these respects be sufficient without any mention of an assault. Though the court thus included "the name of its owner," it was not intended, I think, to hold that that statement would be necessary. That question was not involved. Clearly the court was right in stating that the charge as set forth would be sufficient. (Craig v. State, 157 Ind., 574.)

The words "feloniously, purposely, and with premeditated malice," with which assault and battery was alleged to have been committed, were held sufficient to show that the offense charged was committed in a rude, insolent and angry manner, and, therefore, to constitute the offense as defined by statute. (Hays v. State, 77 Ind., 450; Knight v. State, 84 Ind., 73.)

In Indiana many objections must be taken advantage of by motion to quash, and if not, they are deemed waived. The supreme court of that state has said that "on a motion in arrest, if the indictment is found to contain all the essential elements of a public offense, even though to some extent defectively stated, it will be held sufficient." And again, "In criminal pleading, for uncertainty in the statement of the facts constituting the offense intended or attempted to be charged, an indictment or information can only be assailed or quashed by a motion to quash and never by a motion in arrest, or by an assignment here, for the first time, that the facts stated in the pleading are not sufficient to constitute a public offense." And the court again comes to the same conclusion as to the effect of the words "unlawfully, feloniously, purposely, and with premeditated malice," descriptive of the manner in which an alleged assault and battery was perpetrated, and the court says: "If it was done unlawfully and also feloniously, purposely and with premeditated malice, it was done in an angry manner, and more." (Chandler v. State, 141 Ind., 106.) In Hamilton v. State, 142 Ind., 276, the word "feloniously" was held to be used in the statute defining the offense of larceny to supply that element of the ordinary definition of larceny

implying criminal intent, and that its use in the information was, for the same purpose, entirely sufficient; and, therefore, that the indictment was not insufficient for a failure to charge that the money had been taken with the intent to deprive the owner of it. And so I say here that the word "feloniously" as used in our statute defining robbery was intended as at common law to supply the element of criminal intent and to exclude the idea that the defendant took his own property, and that the same word in the information ought to be given the same effect as against a demurrer or a motion in arrest.

In State v. Halpin (S. D.), 91 N. W., 605, it is held that the word "feloniously," when applied to an act, means that it was done with intent to commit the crime named in the information. In State v. Fordham (N. D.), 101 N. W., 888, a robbery case, it was held that an allegation that the property was wrongfully and feloniously taken covered the intent to steal and that it was not necessary to further allege that the property was taken with intent to steal it. In Keeton v. State, 70 Ark., 163, an indictment for robbery which alleged that the accused did feloniously and violently take certain property from the person of the prosecuting witness, by putting him in fear and against his will, is sufficient, without alleging that he "did steal, take and carry away" such property. The ground of the decision was that the words "feloniously did take from the person," as used in the indictment, imported a stealing and an asportation with intent to deprive the person of the lawful possession of the property in the goods. It is true that in that same state it had previously been held that an indictment for robbery was insufficient which failed to specifically allege the ownership of the property. (Bolés v. State, 58 Ark., 35.) But in that case the indictment did not have the word "steal" or "feloniously take," and, therefore, it may be said that it did not have words charging in substance or by legal conclusion or otherwise that there was an intent to steal the property.

In Rosen v. United States, 161 U. S., 29, it is said in the opinion delivered by Mr. Justice Harlan, that the words "unlawfully, wrongfully, and knowingly," as applied to an act or thing done, imported knowledge of the act or thing so done as well as an evil intent or bad purpose in doing such thing. It was, therefore, held that the defect in the information there being considered was not one of the total omission of an essential averment, but, at most, an inaccurate or imperfect statement of the fact; "and such statement, after verdict, may be taken in the broadest sense authorized by the words used, even if it be adverse to the accused."

As in Arkansas, so in Washington, notwithstanding that it had been held that the omission of an allegation of ownership rendered an indictment insufficient, it has been held that to charge the asportation or taking in the language of the statute defining robbery is sufficient, and an information charging that the defendant "did forcibly and feloniously take from the person" of the prosecuting witness certain property sufficiently alleged the asportation without the use of the words "carried away." And the court cites the Arkansas case among others, and also refers to a previous case in Washington and one in California (19 Wash., 410; 123 Cal., 273), where an information was held sufficient which did not allege the asportation otherwise than in the language of the statute. (State v. Smith, 82 Pac., 918.) If the charge that a defendant did forcibly and feloniously take certain property from the person of a named prosecuting witness sufficiently charges the asportation and the stealing thereof, and I think the courts have rightly held such to be the case, then I must confess that I find it difficult to regard otherwise than as extremely technical and without any substantial reason the holding that in addition to those words the ownership of the property must be alleged as against a motion in arrest on the ground that a public offense is not charged. If, as the authorities all state, the object of alleging ownership is to negative defendant's

right to the property and the fact that he might have taken the property with a good intent, then clearly an allegation charging that he stole it or that he feloniously took it, thus implying that he stole it, clearly, in my opinion, negatives his ownership or the fact of a proper intent on his part. And, in such case, the defect in not specifically alleging ownership cannot be other than one of uncertainty or indefiniteness; for the essential fact that defendant stole the property is included in the allegation, and that fact would be rendered more certain or more specific by a precise allegation of ownership. Such allegation would not introduce a new element into the information, but would merely render more specific an element already there. And, under our statute, I think it entirely clear that the defect is waived if not objected to by motion to quash.

From a careful examination of the authorities upon this subject I am more than ever clearly convinced that statements in cases from other states to the effect that the absence of an allegation of ownership renders the indictment fatally defective are not even to be accepted as persuasive authority in this state unless the decisions were rendered under statutes like our own. It is evident that a statement that a failure to make such allegation constitutes a "fatal defect" may be used by a court, and I think has generally been used in the more recent cases, to indicate that it is a "fatal defect" as against an objection thereto properly raised under the statute of the particular state. To illustrate, it may no doubt be reasonably held a fatal defect in our state as against a motion to quash; but as against a motion in arrest or a demurrer that it would be waived without a motion to quash. To say that the allegation is one of substance does not meet the question, because it is evident that under our statute there may be a defect in alleging a matter of substance which would be waived if not objected to by a motion to quash. The cause for such a motion, "the manner in which the offense is charged," applies to something more than a matter of mere form in

the information.   In Wilbur v. Territory, 3 Wyo., 268, the defect was one of substance, that is to say, it was a defect in the manner of alleging the offense.   And it was held to have been waived because the substantive element was alleged in the indictment, although by a legal conclusion only.   Likewise, in Tway v. State, 7 Wyo., 74, it was held, Mr. Justice Corn delivering the opinion, that the omission of the word "ravish" in an information for rape was waived even if required in such an information by a failure to move to quash; and the word ravish at common law was an indispensable word in charging the crime of rape.

California cases have been referred to as holding necessary an allegation of ownership in charging robbery.   However, by a recent case decided in that state by one of the appellate courts, which was concurred in by the judge who wrote the opinion in the Ammerman case, it is evident that the defect was held to be fatal in the other cases under statutes altogether dissimilar from our own; and that it was not intended to hold that without the allegation the essential elements would not be substantially charged.   In the case of *In re* Myrtle, 84 Pac., 335, a habeas corpus case, which had been instituted by one sentenced upon a plea of guilty of robbery upon an information which did not contain an allegation of ownership, but which did allege a felonious taking from the person, it was said:   "It is doubtless true that a complete description of the crime of robbery includes an allegation of ownership of the property taken, or words which will at once indicate that such property is not the property of the robber, but in our opinion * * * where the complaint and information charge that the defendant 'did wilfully, unlawfully, and feloniously steal, take and carry away, from the person and immediate presence of the person robbed, certain personal property, describing it,' etc., substantially describes the crime of robbery in the language of the code defining it, and, no objection being made by either demurrer or motion in ar-

rest of judgment, the defendant cannot, after sentence, and on a writ of habeas corpus, be heard to say that no offense is charged." And it was held in concluding the opinion that the allegations of the information, upon defendant's plea of guilty, established a case of robbery as completely as if there had been a specific allegation of ownership.

Under the California code a motion in arrest may be founded on any defect in the indictment or information for which a demurrer may be filed, unless waived by a failure to demur; and a demurrer may be filed on several grounds, one ground being that the information does not substantially conform to the requirements of the statute as to the contents of an indictment or information. And the statute prescribing what an indictment or information shall contain says, among other things, that it must be direct and certain as regards (1) the party charged, (2) the offense charged, (3) the particular circumstances of the offense charged when they are necessary to constitute a complete offense. (Penal Code of California, Secs. 1185, 1004, 952.) The code of Iowa, from which state a case has been referred to, provides that a motion in arrest of judgment may be made for any ground which would have been a ground for demurrer; and a demurrer may be filed on the ground among others that the indictment does not substantially conform to the requirements of the code; and the code requires that the indictment must be direct and certain in the same respects exactly as stated in the California code. It would seem, however, in Iowa that a failure to demur does not necessarily waive the right to move in arrest. (Code of Iowa, 1897, Secs. 5426, 5328, 5282.)

The proposition is further illustrated by the California case of People v. Mead, 78 Pac., 1047, which was a prosecution under the statute charging the defendant with the crime of conniving at, consenting to, and permitting his wife to be placed in a house of prostitution. On a motion in arrest it was contended that the statute was not to be construed literally as forbidding a husband to permit his

wife to be placed in a house of prostitution for an innocent purpose, such as a cook or seamstress, and that the crime would not be complete without allegation and proof that the wife was left in such a house with the intent on the part of the husband that she should herself act as a prostitute. The court conceded for the purposes of the case that if the objection had been raised by demurrer for uncertainty the information would be fatally defective. But as there was no demurrer and, therefore, a motion in arrest was waived for a mere insufficiency in the indictment which did not go to the idea that no offense was at all charged it was held that the words "wilfully, unlawfully, and feloniously" which described the act of defendant in placing his wife in a house of prostitution were to be given some effect in construing the language of the information, and that they excluded an act which was by law innocent. And it was remarked that the most that can be said in criticism of the information is that it may not be direct and certain as to the particular circumstances of the offense; and that such an objection is waived by failure to demur.

In California it is also held that a person imprisoned under an indictment which does not charge a public offense may obtain his discharge on a writ of habeas corpus. (*Ex parte* Goldman, 88 Pac., 819.) In connection with the Myrtle case this goes to show that the defect in failing to allege the ownership did *not* render the information *insufficient as failing to state a public offense,* because *if it did then* there must have been a discharge of the prisoner in the Myrtle case; but the only defect it is plain was one of uncertainty in stating the particular circumstances of the offense.

The criminal code of Ohio is like our own as to a motion to quash. And there are several cases in that state to the effect that any defect short of one which renders the information entirely insufficient to charge a public offense must be raised by motion to quash. (Carper v. State, 27 O. St., 572.) It was said in State v. Messenger, 63 Ohio State,

398, at page 400: "A motion to quash is under our code of criminal procedure, the proper method of raising an objection to the indefiniteness of the averments of an indictment, and is waived by demurring to it." The court further says as giving a reason for the statute: "Where a motion to quash is sustained the party may be held to plead to a new indictment in which the error in the former one has been corrected. But on the sustaining the demurrer, the defendant is entitled to his discharge; for a court cannot assume that he is guilty of an offense not charged." And in Indiana, where a motion to quash may be made for many defects, it is settled that for mere defects or uncertainties a motion in arrest will not be sustained, although such defects or uncertainties might be *fatal* on a *motion to quash*. (Campton v. State, 140 Ind., 442; Woodworth v. State, 145 Ind., 276.)

These cases serve also to illustrate what I have said that, though a case may be found holding a certain "defect" to be "fatal," does not necessarily mean that it renders the information insufficient to state an offense, but it may, and I think in most cases does, mean only that it is a fatal defect as against the particular objection raised, such as a motion to quash or a demurrer; although in most cases the defect may be one merely of uncertainty, lack of precision or failure to make the charge specific as to some particular element.

I am thoroughly convinced that our statute was intended to make a demurrer and motion in arrest proper in only two cases: (1) Where the offense charged, though sufficiently charged, is not an offense under our laws either because the act creating it is unconstitutional and void, or because there is no statute or other law making the act a crime, and (2) where some necessary element of the offense is not contained in the information *in any way*, either by specific allegation, legal conclusion, or by necessary implication of the words used. Where the allegations of the information taken in their ordinary technical significance

necessarily include every element of the offense, and the only objection is that some particular element is not made sufficiently specific, then, in my opinion, the defect must be reached by a motion to quash, and if not objected to in that manner it must be held waived by a demurrer or a plea of not guilty.

The evil of any other rule or any other construction of our statute is well exemplified by the case at bar. I cannot imagine for one moment that the defendant was unaware of the nature and cause of the accusation against him, or that by the information he was rendered unable to properly prepare his defense. It is very clear to my mind that he went into the trial with astute counsel fully equipped to present his defense as completely as the facts would warrant without any deprivation of right in that respect by reason of the alleged imperfection of the information. Had he felt that his rights would have been better protected by an allegation of ownership of the property taken, he could have made a motion to quash on the ground that such allegation was omitted from the specific allegations, and in my opinion he ought to have raised the objection in that manner. The court could then have quashed it, a new information could have been filed, perhaps immediately, and unless the defendant desired himself to delay a trial, a trial could probably been had the same term of court upon a new information. It may be that now, caused by lapse of time, it will be impossible to obtain the necessary witnesses, and the defendant, by reason of the technical objection made for the first time after the swearing of the jury, may be allowed to go free without a proper punishment for a crime of which the jury found him to be guilty.

I am most seriously impressed with the necessity of taking a broad view of these statutes and of giving effect to the intention of the legislature which I believe has been reasonably and clearly expressed, and which unquestionably depart very far from the common law method of criminal procedure, rendering the decisions under the old method,

and under statutes dissimilar to our own, either misleading when applied to our own procedure, or of very little, if any, authority. In my opinion the judgment should be affirmed.