**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Sam COURTNEY, Defendant-Appellant.**

**No. 373, Docket 24776.**

United States Court of Appeals
Second Circuit.

Argued June 6, 1958.

Decided Aug. 20, 1958.

Charles H. Miller, Asst. U. S. Atty., Southern District of New York, New York City (Paul W. Williams, U. S. Atty., Southern District of New York, George I. Gordon, Asst. U. S. Atty., Southern District of New York, New York City, on the brief), for plaintiff-appellee.

Joseph Leary Delaney, New York City (Delaney & Donoghue, New York City, on the brief), for defendant-appellant.

Before CLARK, Chief Judge, and PICKETT and MOORE, Circuit Judges.

MOORE, Circuit Judge.

The appellant, Sam Courtney, appeals from a judgment of conviction after a trial before a jury on charges of perjury. The indictment contained ten counts, the essence of which was that appellant testified falsely before a Grand Jury investigating violations of labor racketeering and conspiracy laws as well as other federal criminal statutes. More specifically the Government charged that it was material to its investigation that it ascertain the disposition made of the sum of $395.03 carried on the books of the Courtney Trucking Company, of which appellant was the senior partner, for the week ending June 22, 1956, and whether this sum was given in whole or in part to elevator starters and operators in various buildings, and to employees of various packing houses in the New York City garment district as testified to by appellant. The indictment alleged that appellant well knew and believed that his testimony was not true in that he had not paid out, during the week ending June 22, 1956, the sum so recorded on the books. The Government called a large number of witnesses, most of whom (sixty-one in number) were employees of the packing houses, and elevator starters and operators in the buildings where appellant claimed, in his grand jury testimony, that he had distributed these monies during the week in question. These witnesses testified that they had not received any

payments from appellant during that week.

The $395.03, concerning which appellant was questioned, was attributed, on the Courtney Trucking Company books, to "Garage, Gas & Oil." Such an account had been maintained since the inception of the firm in 1950, but there were no vouchers showing for what purposes approximately $300 to $500 credited weekly to this account was being expended. Appellant's explanation did not relate to garage, gas or oil. As a witness before the Grand Jury he was most specific, stating that he personally had paid out this sum in tips and gratuities to freight elevator and packing house employees in five buildings and five packing houses. Each count of the indictment dealt with one of these five buildings or packing houses.

The special Grand Jury before which appellant testified had been impaneled to investigate charges of racketeering in the garment and trucking industries, payments to union officials for "protection" and federal income tax violations. Any payments by appellant or his firm for purposes which might have resulted in violations of Federal laws were material to the investigation.

Appellant does not on appeal make any claim that his testimony concerning his disposition of the $395.03, during the week of June 22, 1956, was not perjurious, or that he was not guilty as charged. Instead he relies entirely on three alleged errors during the trial, namely, that (1) the trial court admitted evidence as to matters which took place prior to the week ending on June 22, 1956; (2) the trial court refused to strike allegedly prejudicial surplusage from the indictment, and (3) the trial court refused to declare a mistrial when the prosecutor mentioned in his opening statement that appellant had refused to answer certain questions before the Grand Jury, thus creating a prejudice which could not have been cured by the trial court's instructions and ruling.

1. *The "Garage, Gas & Oil" Account.*

Appellant correctly asserts that the indictment is limited to expenditures by appellant during the week of June 22, 1956 about which he testified before the Grand Jury on June 26, 1956. The narrowness of the issue was twice emphasized by the trial court, who said:

"The only thing we are trying here is an issue of perjury, whether the defendant in testifying before the grand jury testified falsely, knowingly and intentionally. Those statements were statements with reference to moneys which he said he paid out to various elevator operators and starters at various places of business in the week ending June 22, 1956."

" * * * all we are concerned with is whether the defendant testified falsely before the grand jury with respect to the events of that week."

Although the perjury was related to expenditures during a particular week in the life of the "Garage, Gas & Oil" account, this circumstance does not preclude the introduction of the history of this account, its purpose and use and appellant's knowledge thereof. Only against the background of the account as it was carried throughout the previous years could the jury properly appraise the credibility of appellant's story of tips and gratuities. It was appellant himself who chose to give this explanation. After hearing the asserted objects of appellant's benefactions deny that they had received his bounty, the jury found appellant guilty. No error in the court's charge is asserted here. It clearly defined the issue to be resolved, namely, did appellant tell the truth when attempting to explain his disbursements from that account during that specific week. The jury said no.

The rather questionable character of the "Garage, Gas & Oil" account was not brought out to convict appellant of other or different crimes as he intimates,

but rather because he selected this account as the foundation for his explanation. The cases which he cites deal with situations where the objectionable proof suggested other offenses and hence was prejudicial.

■ The question addressed to appellant's accountant asking his opinion as to maintaining an account without supporting vouchers would better have been unasked and unanswered because whether it was good accounting practice or poor practice would not bear upon the issue of the truth or falsity of appellant's Grand Jury testimony. However, a single incident such as this during the course of the trial can scarcely be considered to be prejudicial or reversible error.

2. *Alleged Prejudicial Surplusage.*

■ The matter which appellant would strike from the indictment was neither inflammatory nor prejudicial. The bracketed material added to the quoted testimony was explanatory and actually tended to clarify rather than to confuse. Materiality being a part of the Government's case, there was no error in the trial court's failure to strike any portions of the indictment relating to this issue. Furthermore the trial court is allowed wide discretion in coping with such motions.

3. *The Motion for a Mistrial.*

■ In his opening the prosecutor told the jury that when appellant was asked for the names of persons to whom he "gave out this money" appellant (before the Grand Jury) refused to answer. Appellant's counsel thereupon moved for a mistrial. The trial court then said:

"Certainly the question as to whether he has refused to answer has nothing to do with this case and nothing to do with this jury. The only question we have here is whether he gave false testimony before the grand jury, and I will so instruct this jury."

In denying the motion for a mistrial he added:

"I think the jury understands perfectly that the only issues before this jury are whether he gave false testimony. The witness under certain circumstances has a perfect right to refuse to answer questions before the grand jury. Whether he did or not has no bearing upon the issues before this jury."

The trial court's instruction to the jury was so immediate and so direct that there can be no basis for error developed from this incident nor any presumption that the jury would wilfully disregard his admonition. The jury was told that:

"Whether this was a grand jury investigation into racketeering or anything else that might come before a grand jury has no bearing upon this question, which is purely a question: Did the man intentionally lie before the grand jury? That is the only question before this jury here, and therefore the jury will put out of their mind any question as to whether this was racketeering. It might be any one of numerous problems that the grand jury is looking into, and whether the man refused to answer has no bearing upon that question. A man has a right at certain times to refuse to answer before a grand jury, and it is not for me or this jury to consider that in connection with this case."

At the end of the entire case the court asked defense counsel if he wished further instructions on the subject. Counsel, however, said: " * * * to further say something about it now I think would be emphasizing something that might not be any longer in their minds." The court offered to "charge the jury to disregard it and that the witness had a perfect right to refuse to answer the particular questions and that it has no bearing upon this particular case whatsoever." The court agreed that he would not mention it again in his charge and defense counsel seemed satisfied that "what was said

by either counsel has nothing to do with the case."

None of the errors asserted constitutes grounds for reversal.

Judgment affirmed.