**UNITED STATES of America,**
**Appellee,**

v.

**Daniel MURPHY and Albert Mendes,**
**Appellants.**

No. 331, Docket 30907.

United States Court of Appeals
Second Circuit.

Argued Feb. 21, 1967.

Decided March 10, 1967.

John S. Allee, Asst. U. S. Atty., Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty., and Michael W. Mitchell, Asst. U. S. Atty., Southern Dist. of New York, on the brief), for appellee.

Jacob W. Heller, New York City (Heller & Dretzin and Moses L. Kove, New York City, on the brief), for appellants.

Before FRIENDLY, ANDERSON and FEINBERG, Circuit Judges.

ANDERSON, Circuit Jude:

The appellants, Daniel Murphy and Albert Mendes, were respectively the financial secretary and business agent of a local union of the International Association of Bridge, Structural and Ornamental Ironworkers, AFL–CIO. They were found guilty by a jury of having willfully violated § 302 of the Taft-

Hartley Act[1] (29 U.S.C. § 186) by receiving payments[2] of money from four employers who were engaged in the business of fabricating and erecting iron and and steel structures and whose employees were members of the local union. Both appeal from the judgments of conviction entered on the verdicts.

The points raised on appeal concern statements made by the prosecutor in his summation to the jury, which the appellants assert were inflammatory and prejudicial. We conclude that, although the remarks complained of were examples of a lack of the restraint which more competent prosecutors are careful to display, they were not so prejudicial as to call for a new trial, and we affirm.

The Government's case rested almost entirely upon the testimony of the four employers who told of making payments, totalling approximately $5000, to the appellants, as charged. On direct examination it was disclosed that they themselves, though ordinarily liable to prosecution under the statute, had been granted testimonial immunity by the Department of Labor. The accused took the stand and categorically denied ever receiving any payment from any of these four employers or any other employers. Neither side offered any substantial corroborating evidence.[3] The issue presented to the jury was largely one of the credibility of the four employers, on the one hand, and the two union officials on the other.

The appellants argue that in this posture of the case inflammatory statements by the prosecutor were likely to have very damaging consequences. They point to three instances in the course of the prosecutor's argument in which, they assert, he overstepped permissible bounds.

■ The first of these was when he said,

"Well, why were these union officials treated differently from the other people who got liquor? Or, to state the question another way, 'Why—why were these so-called Christmas payments made?'

A Christmas payment is usually $5, a bottle of liquor, $10. These really weren't Christmas payments. They took the form of Christmas payments, but they were something else. Here we are talking about roughly $5,000 for a four-year period from four employers. And how many other employers did these union officials represent?"

It is the appellants' claim that the prosecutor was, in so saying, suggesting that the accused were engaged in a shakedown which involved many employers in addition to the four concerned in the case. Although it would have been better if the assistant district attorney had not rhetorically asked, "And how many other employers did these union officials represent?," when defense counsel objected, Judge Murphy, to confine the jury's attention and consideration to the specific

1. 29 U.S.C. § 186 in pertinent part provides:
 "(a) It shall be unlawful for any employer * * * to pay * * * any money or other thing of value—
 * * * * * * *
 (2) to any labor organization, or any officer or employee thereof, which represents * * * any of the employees of such employer * * *
 * * * * * * *
 (b) (1) It shall be unlawful for any person to * * * receive * * * any payment * * * prohibited by subsection (a) * * *
 * * * * * * *

 (d) Any person who willfully violates any of the provisions of this section shall, upon conviction thereof, be guilty of a misdemeanor * * * "

2. Certain excepted payments have no application to the present case.

3. The Government presented one witness who had delivered envelopes to the union's office, but he did not know the contents of the envelopes. The Government also produced some "records" of payments; however, these documents did not name the payees, and were fragmentary at best.
 Appellants presented six character witnesses to testify as to appellants' reputation for truthfulness and honesty.

offenses charged, promptly instructed the jury as follows:

> "Gentlemen, the issue in this case is contained within the indictment that is charged. These men are accused of these 17-odd crimes here and that is our only problem: Are they guilty or not guilty of those charges, and nothing else."

This was sufficient to overcome any prejudice which may have stemmed from the prosecutor's questions. Compare United States v. Caruso, 358 F.2d 184, 186 (2 Cir. 1966); United States v. Stromberg, 268 F.2d 256, 271 (2 Cir. 1959); United States v. Courtney, 257 F.2d 944, 947 (2 Cir. 1958).

The second instance of which the appellants complain is another portion of the summation for the Government where, they say, the prosecutor charged the accused with the motive of extortion. What he said was,

> "Why did these employers make these payments? That is the important question. Well, you have to understand the industry. And you heard it from all of the witnesses. Murphy admitted to it. Nash talked about it. Other witnesses talked about it. When you need men, you call up the union hall and the union hall sends these men to these various construction jobs. Now, it is quite obvious. You have some good workers in that union hall and there are some very bad ones. And if you look at the contracts, you will see that the wage rate for the iron workers belonging to Local 580 are roughly $4 or $5 an hour.

> Now, no employer, businessman, who is trying to make money can afford to pay $4 or $5 an hour to an incompetent. He needs a good man. He doesn't want to antagonize these two people because these people can give him a very rough time in their business. These witnesses for the government are businessmen. They want to make money, like you want to make money. You are businessmen also. And that brings up another point.

> These two men are still union officials. These employers have no stake whatsoever in antagonizing these two people. These two people have the power to send these employers poor workers day after day."

Appellants contend that these remarks were improper because (a) the Government is not allowed to show motive where it is not an element of the offense, and (b) the prosecutor's argument about motive was not based on any evidence in the record.

■ The first objection is incorrect as a matter of law; the Government may prove motive as circumstantial evidence that an offense was in fact committed even where such proof might incidentally show the commission of another offense. United States v. Houlihan, 332 F.2d 8, 14–15 (2 Cir.), cert. denied, 379 U.S. 828, 85 S.Ct. 56, 13 L.Ed.2d 37 (1964); United States v. Johnson, 254 F.2d 175 (2 Cir.), appeal dismissed, 357 U.S. 933, 78 S.Ct. 1378, 2 L.Ed.2d 1369 (1958); cf., 1 Wigmore, Evidence (3d ed. 1940) § 118. The objection that the prosecutor's remarks about motive were unsupported by anything in the record is not fully sustainable. There was testimony about the mechanics of obtaining workers through the union hiring hall controlled by appellants; and common sense, which the jury is supposed to exercise, would say that it was more than likely that there were both good and poor workers. From these facts the prosecutor urged the jury to draw a somewhat tenuous inference; but it was not reversible error—particularly where it went only to motive and not directly to the ultimate issue of guilt or innocence.

The remaining instance concerns another portion of the argument for the Government in which the prosecutor said,

> "The immunity which was granted to these witnesses was granted by the Department of Labor. Now, *the Department of Labor isn't going to grant immunity if no crimes have been committed.* And the immunity relates to the testimony that the witnesses give. \* \* \*

\* \* \* \* \* \*

Say you haven't committed a crime. What would be the sense of taking immunity if you hadn't committed a crime? If you hadn't committed a crime, you have nothing to worry about. But if you have committed a crime, you need immunity. But once having immunity—well, if you haven't committed a crime, you have nothing to worry about and you are certainly not going to get immunity so that you can walk into court commit perjury, which is a serious crime.

So *I think* the fact that each of these people received immunity shows that they did this crime, that these defendants received the moneys which the government witnesses admitted to." (Emphasis added.)

The appellants contend that the prosecutor thus improperly (a) expressed his own personal belief in the credibility of the Government witnesses, and (b) claimed that the granting of immunity to the four contractors by the Department of Labor was evidence of guilt on the part of the accused.

 As a general rule a prosecutor may not express his personal belief in the testimony of witnesses. United States v. White, 324 F.2d 814, 816 (2 Cir. 1963); Greenberg v. United States, 280 F.2d 472 (1 Cir. 1960). However, the stray inclusion of the phrase "I think" in this portion of his argument hardly, if at all, constitutes an expression of his belief in the witnesses. It could not have been prejudicial, and it was not objected to below. See United States v. Johnson, 331 F.2d 281 (2d Cir.), cert. denied, 379 U.S. 905, 85 S.Ct. 196, 13 L.Ed.2d 178 (1964).

 The argument that the granting of immunity to the four contractors should be taken as evidence that the crimes had been committed was, of course, improper, but the prosecutor at that point was talking about the crimes committed by the contractors in paying the money; not about the guilt of the defendants. He argued that it was very unlikely that the contractors would have sought immunity if they hadn't committed the crimes and it was also unlikely that they would risk a charge of perjury by testifying to the commission of crimes that never occurred. These arguments were presented to persuade the jury that it ought to believe the Government witnesses. He then went on to argue that the jury should believe that, as the contractors testified, the "defendants received the moneys."

In the course of presenting the evidence for the Government the prosecutor brought out that each employer was aware that his grant of immunity did not shield him from prosecution for perjury. It seems clear that the court and counsel in the case, at the time the summation for the Government was being made, took the prosecutor's remarks as directed toward the credibility of the four contractors. The trial judge did not intervene and there was no objection by defense counsel.

"[C]ounsel for the defense cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial."

United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 238–239, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). Compare United States v. Johnson, supra.

We conclude that there is insufficient ground to warrant the ordering of a new trial even though we are of the opinion that the assistant district attorney should have shown greater care and restraint in arguing the matters of which the appellants complain.[4]

The judgments below are affirmed.

4. Neither of the Assistant United States Attorneys who represented the Government in this appeal, was the prosecutor at the trial.