James B. HARRIS, Appellant
(Defendant below),

v.

STATE of Wyoming, Appellee
(Plaintiff below).

No. 3916.

Supreme Court of Wyoming.

Aug. 5, 1971.

Rehearing Denied Sept. 20, 1971.

Raymond B. Hunkins, of Jones, Jones, Vines & Hunkins, Wheatland, for appellant.

James E. Barrett, Atty. Gen., William L. Kallal, Asst. Atty. Gen., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GRAY, JJ.

Chief Justice McINTYRE delivered the opinion of the court.

James B. Harris, town clerk and treasurer of the Town of Wheatland, was charged in 12 counts with embezzling money from the Town of Wheatland, in the total amount of $14,247.32. Upon trial, the jury returned a verdict of not guilty on eight counts and guilty on four counts. The amount involved in the four counts was $177.50.

On appeal the defendant asserts four grounds for reversal which we need to consider. They are:

1. That the evidence was insufficient to sustain the conviction of defendant.

2. That there was an absence of evidence pertaining to conversion.

3. That the exclusion of certain testimony offered by the defendant was erroneous.

4. Error in denying defendant's application for costs.

### 1. *The Evidence*

On appeal, counsel for appellant has pictured his client as a person not "intellectually equipped" to handle the position he held; as one with below average IQ and no training for his job; and as an official whose clerical ability was poor. Admitting that Harris' office was being "inefficiently administered," counsel argues nevertheless that he was always a good citizen with an active interest in civic and church affairs.

This approach and argument seems to be slanted more toward a jury than an appellate court. In view of it, we think we should mention that appellant's appeal is not a new trial. We do not sit as a second jury with power to decide whether the defendant embezzled the money involved in the four counts he was convicted on.

In passing upon the sufficiency of the evidence to support a verdict of guilty, an appellate court will not weigh conflicting evidence nor consider the credibility of the witnesses; and it must view the evidence in a light most favorable to the prosecution and determine questions of law as to whether there is substantial evidence, direct or circumstantial, or both, which, with the reasonable inferences that may be drawn therefrom, will sustain the verdict.[1]

In the case we are concerned with, the evidence discloses quite clearly that during Harris' tenure in office the practice was to ring up on a cash register moneys received for utilities. All other moneys were merely placed in the cash drawer, and the payor was given an official receipt. At the end of a day, utility moneys were accounted for by comparing the cash register tape and the utility stubs collected.

Employees in the office would then check to see that the remaining money collected on any given day balanced with the official receipts (exclusive of utility stubs) issued for that day. Funds were deposited in the bank and balance for each day was obtained by seeing that total deposits for the day equaled the total receipts.

If an official or employee were to collect money and not issue an official receipt for it, a like amount could be removed from the cash drawer and there still would be a balance because deposits at the end of the day would equal re-

1. United States v. Weiss, 10 Cir., 431 F.2d 1402, 1407; Stock v. Roebling, Wyo., 459 P.2d 780, 784.

ceipts. If the payor paid by check and a like amount was removed from the drawer in cash, there would still be a balance for the day. It is the prosecution's theory that the defendant was in this manner able to embezzle funds without causing an imbalance for any day.

Aside from the defendant, there were generally two women employees in his office, during the time involved in this case. These employees received and handled funds in connection with utility accounts. The funds collected for utilities far exceeded all other funds collected. Inasmuch as the women employees, as well as defendant, handled utility accounts, the state was confronted with a situation where proof of embezzlement of utility funds would not necessarily prove that defendant was the embezzler.

We are not concerned with that problem, however, because the jury did not find the defendant guilty of embezzling anything except funds connected with the town's cemetery accounts. With respect to these accounts, the evidence is quite sufficient to disclose that Harris, at his specific request, controlled and handled all cemetery accounts.

The evidence indicates Harris' signature was on all but one or two of Wheatland's cemetery accounts. He himself was able to show only once when one of the women employees handled such an account. In any event, the defendant's signature was on all the cemetery accounts involved in the charges on which he was convicted. There was no denial of this.

There was circumstantial evidence which would tend to implicate Harris. For example, when the state examiners conducted an inspection and informed the defendant that there was a substantial shortage in funds of the town, he threw away some of the records. At another time, the women employees discovered a shortage of $100. When Harris was confronted with this, he reimbursed the town.

With respect to the particular counts upon which defendant was convicted, clear and convincing proof was presented to the jury to show that Harris had received money for burial spaces and perpetual care; that he had issued deeds and perpetual care agreements but no official receipt. Or in other cases, where funds were paid to Harris by a funeral director for cemetery fees of certain families, official receipts and burial permits were issued to some of the families but none to other of the families.

Where no official receipt was issued for money received, it meant an equivalent amount was taken from town funds because there would otherwise have been no balance at the end of the day. It is clear from the evidence that the particular transactions involved in each finding of guilt were personally handled by Harris.

### 2. Conversion

■ Our discussion concerning the sufficiency of evidence has already demonstrated that there was ample evidence for the jury to believe Harris, at least four times, either took money belonging to the town or failed to turn in money collected for the town. It was not necessary for the prosecution to prove precisely what the money was spent for or how it was disposed of.

The theory of defendant's counsel seems to be that because embezzled funds were not apparent in Harris' income tax returns; and there was no evidence of unusual spending by Harris; and no witness testified to seeing the defendant take the funds involved from the town's cash drawer, there was an absence of proof of conversion. This of course is negative argument and apparently the jury did not accept it.

■ As stated in 29A C.J.S. Embezzlement § 11, pp. 26–27, the word "conversion" within the meaning of embezzlement

statutes is a fraudulent appropriation of a thing to one's own use; and embezzlement is complete whenever the misappropriation is made.[2]

The evidence amply supports a conclusion that Harris received funds belonging to the Town of Wheatland and deliberately retained some of such funds for his own use. Defendant's argument that this evidence is insufficient amounts to an assertion that he cannot be convicted of embezzlement without eyewitness testimony that he physically pocketed the missing funds. The First Circuit Court, in O'Malley v. United States, 1 Cir., 378 F.2d 401, 403, held such a contention to be wholly without merit and stated:

"* * * That an inference of guilt can be buttressed on circumstantial evidence of this nature is clear. To hold otherwise would impose an unrealistic burden on the prosecution, which fairness to the defendant does not require."

In United States v. Powell, 4 Cir., 413 F.2d 1037, 1038, the court said both the criminal intent and the actual taking may be proved by circumstantial evidence; and where the defendant alone has access to the property and a shortage is disclosed, and no explanation is tendered by the accused, the jury may reasonably infer from the circumstances that defendant has embezzled the missing funds.

Although other employees besides Harris had access to funds of the Town of Wheatland, the evidence was ample to show that he handled the transactions involved and failed to issue proper receipts. From this evidence, the jury could believe that only he could have taken the missing funds.

### 3. *Exclusion of Testimony*

During the course of trial a defense witness, Daisy Ross, testified she at one time purchased two cemetery lots from the Town of Wheatland, through a funeral director. Defense counsel asked if she subsequently received any reimbursement for the lots and she answered in the affirmative. Despite objections by the prosecution as to this line of testimony on the ground that it was immaterial, none of the testimony was stricken. The court at this point, however, suggested defense counsel make an offer. Whereupon this offer was made:

"The defendant offers to prove through the witness, Daisy Ross, that if permitted to testify she would testify that she purchased two lots from the town of Wheatland through the Schrader Funeral Home for which she paid and was subsequently reimbursed the full amount of these lots by Mr. Harris when it was determined that her sister, Mrs. Jack Montgomery had previously paid for the lots, and Mr. Harris paid her this in cash."

Counsel failed to show the trial court and he fails to show us where the offered testimony would have been material. It had nothing to do with any of the transactions involved in the charges against defendant. On appeal, counsel does say the significance of the testimony was "its showing of the loose manner in which the cemetery accounts were administered." However, there was nothing in the offer of proof to indicate to the trial court that the testimony was to be offered for such a purpose.

In any event, we fail to see where the testimony was relevant or how it would have benefited the defendant. As we read

2. For equivalent definitions and statements see Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 549, 90 L.Ed. 752, 166 A.L.R. 884; State v. Legg, 243 Wis. 449, 10 N.W.2d 187, 189; State v. Menke, Ohio App., 59 N.E.2d 393, 402; State v. Pietranton, 140 W.Va. 444, 84 S.E.2d 774, 786; United States v. Powell, D.C.Va., 294 F.Supp. 1353, 1355, affd. 4 Cir., 413 F. 2d 1037, 1038; and People v. Costello, 107 Cal.App.2d 514, 237 P.2d 281, 283–284.

the offer, it is questionable whether it would have been harmful or helpful to defendant.

At least, in the absence of anything in the offer to indicate that defendant was trying to show the loose manner in which he kept cemetery accounts, we cannot say the trial court abused its discretion by excluding testimony which appeared wholly irrelevant in the light of counsel's offer.

### 4. Costs

Following the conviction of defendant, he filed an application for costs in which he asked to be reimbursed for witness fees and expenses incurred for the services of an accountant. The application indicated it was based on the provisions of § 1–195, W.S.1957, 1971 Cum.Supp. At least a month after judgment and sentence were entered in the case, the court entered an order denying the application for costs.

Appellant's notice of appeal recites only that such appeal is from the judgment and sentence. There has been no appeal from the order denying costs. Hence, that matter is not before us.

We have noticed nevertheless that defendant's application for costs has to do primarily with payment of the accountant who testified for defendant. In that connection, § 1–195 provides an expert witness shall be allowed $25 per day, or such other amount as the court shall allow, and the expert fee of such witness shall be charged by the court as costs against any party or be apportioned among some or all parties "in the discretion of the court."

We notice from the record that the trial court ordered a transcript for defendant, to be paid for by the county. We think there was no abuse of discretion when the court declined to charge the county a fee of $1,510 which was claimed by defendant's accountant.

We fail to find error in any of the four assignments presented for our review.

Affirmed.