**Michael W. McCARTY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 5303.**

Supreme Court of Wyoming.

Sept. 12, 1980.

---

Michael H. Schilling, App. Counsel, Wyoming Public Defender Program, Laramie, for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div. Cheyenne, and Paul H. Byrtus, Legal Intern, Cheyenne, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

By virtue of a criminal complaint dated December 17, 1979, appellant Michael McCarty was arrested and charged with the aggravated robbery of the Shamrock Country Store in Laramie, Wyoming, in violation of § 6–4–402, W.S.1977. The crime was alleged to have been committed on December 15, 1979.

Appellant was tried before a jury on February 26 and 27, 1980, and was convicted and sentenced to a term in the Wyoming State Penitentiary of five to six years for aggravated robbery.

Rhonda Haskell, the manager and cashier of the Shamrock Country Store, testified at appellant's trial that she was working at the store at the time of the robbery. She said that at approximately 6:30 p. m., a person entered the north door of the store wearing a white mask and carrying a gun. This person demanded all of the money from the cash register, and when there was no response to this demand he fired a shot through the window of the store. The manager removed the cash drawer from the register, placed it down on the counter, and the intruder removed about Three Hundred Dollars from the drawer and ran out of the north door. This witness, during the course of the trial, stated that she was acquainted with the appellant, Michael McCarty, prior to the day of the robbery, but could not make a positive identification in court that the appellant was the one who committed the robbery.

At 6:36 p. m., December 15, 1979, the Albany County Sheriff's Office received a call from the Laramie Police Department reporting that the Shamrock Country Store had been robbed. Upon arriving at the scene, the sheriff's officer found three subjects in a vehicle, whose names were Bradley Wagner, Randy Lloyd and Bruce Burton. In a search of the area, officers also recovered "a hat, like a ski hat, a knit type

of hat and a piece of cloth like a scarf or cloth type of thing." [1]

The three people who were found outside the store later testified for the State. Bradley Wagner, the driver of the vehicle, stated that he, appellant–McCarty, Burton and Lloyd went by vehicle to the area of the Shamrock Country Store. He estimated the time to be approximately 6:45 p. m. on the day the offense was committed. Wagner parked his car in the alleyway near the store and watched appellant depart, after telling the driver to "stay here." Mr. Wagner then observed appellant disappear around a wall near the store, at which time he saw a white stocking cap protruding from McCarty's back pocket. Wagner then moved the car down the alley a short distance and parked. He soon saw a person run past the parked car with a scarf covering his nose and the lower part of his face. This individual had a hat on his head and was running quite fast. At appellant's trial, Wagner was unable to identify McCarty as the person whom he saw running by the car wearing the hat and scarf.

The testimony of Bruce Burton and Randy Lloyd substantiates the testimony of Wagner. However, Burton testified that after McCarty left the car, they drove slowly back and forth in front of the Shamrock Country Store but did not see the appellant in the store. They then parked around the corner and waited for him. Burton went on to testify that he could not identify the individual who ran by the car wearing a scarf and hat as being the appellant. Lloyd was not asked whether or not he could identify the individual as the appellant.

At approximately 7:30 or 8:00 p. m., on the night in question, appellant appeared at the home of Bruce Cotherman in West Laramie and said that he had run out of gas, and Mr. Cotherman offered to give him a ride to his home. At 10:15 p. m., law enforcement officials arrested appellant in his home.

Other evidence produced by the State at trial concerned the tracing of a pistol alleged to have been used in the offense. This .22–calibre pistol was said to have been sold by a Mr. Wing of Laramie Basin Hardware to a Kurt Kallmeyer on April 21, 1979. Kallmeyer transferred possession of the gun to someone named "Mike" on September 15th or 16th. At a pretrial photograph identification, Kallmeyer identified the person to whom he sold the gun as appellant.

Witnesses Rhonda Haskell and Linda Dowdy, who were in the store at the time of the robbery, established that the person who committed the robbery was not wearing a cap. The three individuals in the car outside the store, on the other hand, testified that the person they saw fleeing was wearing a ski cap/hat or stocking cap. Witness Haskell described the person who held up the store as about 5 feet 10 inches tall, while Burton described the individual who fled from the vicinity of the store as being 6 feet to 6 feet 5 inches tall. `Both Haskell and Dowdy, who had an opportunity to observe the robber's ungloved hands, observed no rings on either hand. However, at the time of his arrest and booking, appellant's property inventory indicates that he had a wedding band and a lion–head ring.

Anita Maynard testified as an alibi witness on appellant's behalf. She was present in the house of appellant on the evening the crime was committed and testified that appellant arrived home at approximately 6:00 to 6:10 p. m. and remained at home until the police came.

### ISSUE

Appellant presents the following issue on appeal:

"Whether there is sufficient evidence of eyewitness identification of Appellant as the person who committed the crime charged to sustain the conviction."

---

1. Throughout the testimony, all of the witnesses and attorneys interchangeably referred to the referenced headgear as a hat, a ski hat, a ski cap, or a stocking cap. It was, in fact, a white stocking cap with some red stripes and a tassel, as described by some witnesses. The "scarf" was a torn, white T–shirt with one sleeve missing and was also referred to as a mask, a thing over his face, and similar expressions.

The issue for decision is, however, whether there is sufficient evidence, as a matter of law, to sustain the conviction of the appellant for aggravated robbery in violation of § 6–4–402, supra.

Appellant undertakes an argument which goes like this:

"The conviction of Appellant cannot be sustained because the record contains no evidence that Appellant was identified by witnesses to the offense as the person who committed the crime.",

and he concludes:

"Failure of identification is failure to establish an essential element of the offense and requires reversal of Appellant's conviction."

■ This evidences a misconception of the problem. The issue which appellant frames and the argument he presents both assume that sufficient evidence of eyewitness identification is necessary in order to sustain appellant's conviction. Appellant concludes that such identification is an essential element of the offense. The assumption and conclusion are incorrect. Eyewitness identification is neither an element of the offense of armed robbery nor necessary to sustain a conviction.

■ At trial, the State must, of course, establish by evidence both the fact of the elements of the offense in question and that the defendant is the one who committed the offense. 77 C.J.S. Robbery § 44; 29 Am. Jur.2d, Evidence § 149; and 30 Am.Jur.2d, Evidence § 1140. The elements of the offense of aggravated robbery in Wyoming are those found in the statute defining the offense, as follows:

'Whoever forcibly and feloniously takes from the person or possession of another any property of value, by violence or by putting in fear, when a firearm or other deadly weapon is used or exhibited in the commission of the offense, is guilty of aggravated robbery . . . ." § 6–4–402, W.S.1977.

■ With the addition of elements as to intent and the time and location of the offense, the elements listed in the jury in-structions in this case were those contained in the statute. Both the statute and the instructions contain substantially the same basic elements as were required at common law. 67 Am.Jur.2d, Robbery § 10, sets out those elements as:

" . . . Those elements are (1) a felonious taking, (2) accompanied by an asportation, of (3) personal property of value (4) from the person of another or in his presence, (5) against his will, (6) by violence or by putting him in fear, (7) animo furandi (with intent to steal). . . . "

See, also, *McGinnis v. State*, 16 Wyo. 72, 91 P. 936 (1907).

■ In addition to proving the corpus delicti, the State at trial must prove that the defendant is the one who committed the offense. Such is tantamount to proving the guilt of the accused. Proof of the identity of the accused as the perpetrator of the crime committed, however, does not require the identification of the accused by a witness to the crime. Rather, as this court has frequently stated, "Circumstantial evidence may be used to prove both the corpus delicti and the connection of the accused with a crime." *Bennett v. State*, Wyo., 377 P.2d 634, 637 (1963), citing 22A C.J.S. Criminal Law § 604 (1961). *Accord: Dryden v. State*, Wyo., 535 P.2d 483 (1975); and *Hurst v. State*, Wyo., 563 P.2d 232 (1977).

Therefore, this case submits the question which asks whether there is sufficient evidence, as a matter of law, to sustain the conviction of the appellant for aggravated robbery in violation of § 6–4–402, supra.

### Circumstantial Evidence

■ The evidence presented at trial was, admittedly, circumstantial. As pointed out by the appellant, Rhonda Haskell, the manager of the Shamrock (Foster's) Country Store, was unable to positively identify him as the robber. This is not surprising, however, since the robber was masked with a "scarf" made from a T-shirt "over the brim of his nose, nearly covering his eyes" The fact that the evidence was circumstantial does not diminish its value. As we said in

*Wells v. State*, Wyo., 613 P.2d 201, 202, (1980), where we cited *Blakely v. State*, Wyo., 542 P.2d 857 (1975):

" . . . The law makes no distinction between direct and circumstantial evidence and only requires that the jury, before convicting a defendant, be satisfied of the defendant's guilt beyond a reasonable doubt from all the evidence in the case. Circumstantial evidence has both standing and stature."

Convictions may be based upon circumstantial evidence and it is for the jury to weigh the value of such evidence. *Dryden*, supra, at 496; and *Buckles v. State*, Wyo., 500 P.2d 518, 521 (1972). The jury may also draw reasonable inferences from the evidence introduced. *Cloman v. State*, Wyo., 574 P.2d 410, 416 (1978); and *Beane v. State*, Wyo., 596 P.2d 325, 327 (1979).

The standard of review in a criminal case by this court still remains the same as when we quoted from *Harris v. State*, Wyo., 487 P.2d 800, 801 (1971), in *Blakely*, supra, at 542 P.2d 863, the following:

" . . . This court will 'view the evidence in a light most favorable to the prosecution and determine questions of law as to whether there is substantial evidence, direct or circumstantial, or both, which, with the reasonable inferences that may be drawn therefrom, will sustain the verdict,' "

### Evidence Connecting the Defendant with the Crime

■ The evidence connecting the appellant with the robbery consisted of the following:

1. Three friends of the appellant, Bradley Wagner, Bruce Burton, and Randy Lloyd testified that they accompanied the appellant to the Shamrock Country Store the night of the robbery. They initially parked at the end of the alleyway west of the store. Each testified that the appellant got out of the car and walked east toward the north door of the store and that they saw him turn right at the corner of the alley wall. Randy Lloyd testified that at that point, he looked at his watch and it was 6:34 p. m.

2. Events after the robbery linked the appellant to the crime. The appellant did not return to the car, but his three companions saw someone run by the car after they had moved it closer to the store. This fleeing individual was wearing a white scarf and was carrying something in his hand, although the three could not tell what it was. In addition, the runner had on a red and white stocking cap. Earlier, when the appellant had left the car, the boys had noticed a red and white stocking cap protruding from the back pocket or waist of his pants. The cap and the scarf were later found together in the street at the end of the alley. The appellant later appeared at the home of Bruce Cotherman, eleven blocks from the Shamrock Country Store, and asked for a ride home.

3. The cap linked the appellant to the robbery in another way. Hair samples were taken from the appellant. These were sent, along with the cap, to the FBI crime laboratory in Washington, D.C. Hairs were found in the stocking cap and compared with those taken from the appellant. The results, testified to by an expert from the laboratory, were that the hairs from the cap "exhibited the same microscopic characteristics" as those taken from the appellant and "could have" come from him.

4. The gun used in the robbery also associated the appellant with the crime. It was found almost three weeks after the robbery about two blocks from the store. Both Haskell and Dowdy identified it as the weapon used in the robbery. The gun had originally been purchased from Laramie Basin Hardware by Kurt Kallmeyer. He had "traded it to Mike." At trial, Kallmeyer identified the appellant as the person to whom he had sold the weapon. Several of appellant's friends also testified that they had seen the gun at appellant's apartment.

5. Finally, the correspondence between the description of appellant given by Wagner, Burton and Lloyd, and that given by

Haskell and Dowdy, indicated that the appellant was the robber. The boys testified that the appellant was wearing blue jeans and a blue or dark blue coat. The robber also wore blue jeans and a dark blue coat. In addition, the women testified that the robber had brown hair which was parted down the middle, dark eyes, and a large nose. They described him as being five feet 10 inches to 6 feet in height and as "skinny." While no description of the appellant appears in the record, no claim that the description did not fit the appellant was raised at trial and apparently the jury concluded that the appellant fit the description.

The evidence recited above is sufficient to sustain appellant's conviction for aggravated robbery in violation of § 6–4–402, supra. From it, the jury could have found beyond a reasonable doubt that the appellant committed aggravated robbery. The robber had forcibly taken approximately Three Hundred Dollars from the possession of Rhonda Haskell, the store manager, by using a deadly weapon and placing her in fear. It was reasonable for the jury to conclude that the appellant had entered the store, robbed it, and ran down the alley afterwards, discarding the mask and cap in the street as he ran, and tossing the gun down about a block farther away. He had been placed at the store at the time of the robbery, wearing clothes similar to those of the robber, and the cap and gun were owned by him. The evidence is sufficient to sustain the conviction.

Affirmed.