Cecil BROWDER, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 5596.

Supreme Court of Wyoming.

Jan. 29, 1982.

after service of the summons and complaint. The district court found it to be in default.

Gerald M. Gallivan, Director, Wyoming Defender Aid Program (argued), Michael H. Schilling, Appellate Counsel, and Dann D. McLean, Student Intern, Laramie, for appellant.

Sharon A. Lyman, Asst. Atty. Gen. (argued), Steven F. Freudenthal, Atty. Gen., for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

This appeal is from a judgment and sentence based upon appellant's conviction of first-degree sexual assault in violation of § 6–4–302, W.S.1977.[1] The issue he raises

---

1. Section 6–4–302, W.S.1977 provides:
   "(a) Any actor who inflicts sexual penetration or sexual intrusion on a victim commits a sexual assault in the first degree if:
   "(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement; or
   "(ii) The actor causes submission of the victim by threat of death, serious bodily injury, extreme physical pain or kidnapping to be inflicted on anyone and the victim reasonably believes that the actor has the present ability to execute these threats; or
   "(iii) The victim is physically helpless, and the actor knows or should reasonably know the victim is physically helpless and the victim has not consented; [or]
   "(iv) The actor knows or should reasonably know that the victim through a mental illness, mental deficiency or developmental disability is incapable of appraising the nature of the victim's conduct."

on appeal is whether the prosecutor's comments during closing argument constituted plain error.[2]

We will reverse.

■ On appeal, when presented with a challenge to the trier of fact's findings, we are required to accept the evidence of the prevailing party—in this instance the prosecution—as true, and leave out of consideration entirely the evidence of the appellant in conflict therewith. *McCarty v. State*, Wyo., 616 P.2d 782 (1980). But in this appeal no challenge is made to the sufficiency of the evidence; a reversal is sought because the evidence was close, and allegedly the improper comments contained in the prosecutor's closing may have tipped the scales and denied appellant his right to a fair trial. Accordingly we must consider all the evidence in considering what harm was done and whether appellant was denied a fair trial. Ordinarily we do not examine the evidence as closely as we do here and are confined to consideration of just the State's case; the exception being when substantial evidence is an issue. However, here the issue raised concerns whether, without the misconduct of the prosecutor, the jury would have arrived at a verdict of guilty. We do this as a prelude to considering plain error.

The incident underlying appellant's conviction occurred on or about January 14, 1981 in Uinta County. The supposed victim, whom we shall refer to as "J," was then living there in a trailer also occupied by a male friend. During the afternoon of the day in question the appellant, along with his companion Trenton Frith, knocked on the door of the trailer in which J resided. When J answered the door, appellant introduced himself and Frith, and asked J if she could help them find the trailer in which one "Zac" and his wife were living. J indicated that, though she knew Zac, she did not know where he resided. However, she offered to look his name up in the telephone directory; meanwhile she invited appellant and his companion into the trailer.

Once inside, the three individuals began conversing about themselves, explaining who they were and what they did. The men showed J their job I.D.'s and offered to try and help her get a job with their employer. Appellant, who had entered with a beer in his hand, finished it, and was offered another one by J. His companion noticed a guitar in the trailer and asked if he could play. J turned off the record player so that she and appellant could listen to Frith's music.

Soon appellant asked if J was interested in going with them to the P.C.C. Man Camp, where the men lived and worked. The State's evidence was that appellant said he needed to go there to pick something up, while the men claimed that the purpose of the trip was to get marijuana to smoke, and that J knew that. In any event, J agreed to go; and all three of them hopped into a station wagon driven by appellant.

During the drive to the camp, the three engaged in conversation while consuming beer. When they reached the camp's entrance, J got into the backseat and hid beneath a coat. This was necessary because no women were supposed to be allowed past the guard station. Once inside the camp, appellant drove to the building in which Frith lived. The three exited the vehicle and went inside to Frith's room where it was discovered that the room had been ransacked. A guard was summoned. He stepped into the room and told Frith he would need to make a list of what was missing. The guard then left saying he would go back to the front guard shack and report the incident. Though the guard and J both saw each other, nothing was said between them.

---

2. It is interesting to note that the trial judge sentenced appellant to a minimum of five years and a maximum of five years and four months in prison, and then suspended four years on both the minimum and maximum of that sentence as well as giving appellant credit on both the minimum and maximum sentences for time spent in county jail during the pendency of the case.

After the guard's departure, marijuana cigarettes were smoked. J claimed she was pressured into smoking a little of one; appellant and Frith contended that she joined in smoking several quite readily. All three admitted to a continued consumption of beer.

Next, J asserted that appellant placed a hand on her crotch. With this, she became upset and asked to be taken home because she loved her boyfriend. J next testified that appellant told her to watch out or he would rape her right there, and that then Frith told him to shut up and took him away into the bathroom for awhile. Both appellant and Frith denied that appellant ever did or said anything along the lines of J's claim.

Soon all three returned to the car and started back to the trailer in which J lived. Everyone agreed at trial that, during this ride, J got chummier with Frith. J explained this was because he promised to protect her from appellant. Back at her trailer, J either invited or allowed appellant and Frith back in, depending upon who was telling the story. She then went and started folding clothes which were in the dryer. Frith assisted her in this endeavor. According to the men's testimony, this ended with Frith and J kissing.

Next, J announced she needed to take a shower. She claimed that she went into the bathroom and locked the door, and then took her shower. When she got out, she grabbed a towel and noticed the bathroom door ajar. Appellant and Frith testified that they understood her announcement, about taking a shower, to be an invitation. Frith walked to the bathroom and found the door unlocked. He undressed while appellant walked into the bathroom.

J testified that appellant grabbed her towel away from her and sat on the toilet while she screamed for him to get out and grabbed the towel back and covered herself. Appellant commented on how pretty J was, and then Frith walked into the bathroom and told appellant to leave J alone. The other version of the incident was that J was wrapped in a towel when appellant walked in and sat on the toilet. As Frith walked in, appellant told J how pretty she was and asked if she wanted to make it. When she declined, appellant left her alone with Frith.

What followed was, forced sex according to J, and consensual sex according to Frith. While it was going on, appellant testified that he was in the living room when someone knocked at the door looking for either J's boyfriend—Roger—or her roommate—Benny—supposedly to buy some drugs. After this person left, appellant went back to the bathroom, took his clothes off, and watched. When Frith and J finished, Frith took a shower and appellant indicated that he was interested in having sex with J too. When she told him emphatically she wasn't interested, he left. When the men were dressed, J suddenly slammed the bathroom door shut and told them to leave. According to their testimony, Frith tried to talk to J; but, when this failed, they left.

J's version of what occurred differed from the men's. She stated that after Frith was finished, appellant also forced her to submit to him sexually. While this was occurring, she heard someone knock on the door and Frith answer it and talk with a visitor for a short time. J claimed she screamed for help, but none came. Finally appellant finished and left the bathroom. She got up, shut the door, locked it, and then screamed for them to leave, which they did.

Other evidence was introduced that appellant went around bragging about having forced some girl to have sex with him. However, some damaging impeachment was done. It was alleged that most of the witnesses against appellant and Frith were involved in a lot of drug dealings and that they thought Frith had stolen some drugs from them. Also, it was suggested that these witnesses were not too happy with appellant and Frith for making so many allegations about who was involved in dealing in drugs during the course of their defense. It should also be noted that no one succeeded in finding who had knocked on J's door while the men were there.

Some evidence was admitted to demonstrate that a forced entry may have, at some point in time, been made into the bathroom, but the evidence was not particularly overwhelming. Moreover, no fingerprints were taken; and thus, there was nothing but J's testimony indicating that it was appellant and Frith who forced open the bathroom door.

Clearly the evidence was close; it would have been easy for a jury to go either way. With that in mind, we must consider appellant's argument that the prosecutor's closing statements constituted plain error.

■ Closing arguments are meant to be just that, arguments premised upon the evidence already submitted to the jury. Prosecutors are no more limited in their closing than defense counsel. They may review the evidence and suggest to the jury inferences based thereon. The purpose of closing arguments is to allow counsel to offer ways of viewing the significance of the evidence. *Hopkinson v. State*, Wyo., 632 P.2d 79, 145 (1981); *Ross v. State*, 8 Wyo. 351, 57 P. 924 (1899). However, there are limits, not only on prosecutors, but on all attorneys.

These limits are designed to insure the fairness of trial. Prosecutors, as well as defense counsel, must be held to abide by these rules or else the whole judicial system fails. Granted, courts have moved to protect the defendant and thus have made the prosecutor's job a difficult one. Convictions are hard to come by; however, we should not forget that the aim of the system is the attainment of justice. We must not allow the occasional prosecutor who becomes overzealous in his job to forget, either. The role of the prosecuting attorney in a criminal case "differs from that of the usual advocate; his duty is to seek justice, not merely to convict." ABA Code of Professional Responsibility, EC 7–13 (1980). It is up to the jury to decide what is just. But to insure that the jury's decision is correct, the attorneys must abide by the rules established to aid the jury in its quest for justice.

■ Appellant calls to our attention rules he contends that the prosecutor failed to abide by. First, it is well established that it is impermissible for prosecutors to assert their own credibility as a basis for conviction of defendants. *United States v. Herrera*, 531 F.2d 788, 790 (5th Cir. 1976). And second, "[i]t is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence of the guilt of the defendant." ABA Standards for Criminal Justice, The Prosecution Function, Standard 3–5.8 (1980). Prosecutors, as well as attorneys in general, acting as counsel in particular cases, are prohibited from attesting to facts or asserting as fact their personal beliefs relating to matters in issue. *Ross v. State*, supra, 8 Wyo. at 372, 57 P. 924. They are not to be witnesses testifying through their closing. *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

In the case now before us the prosecuting attorney repeatedly overstepped and ignored these rules in his pursuit of victory. During his closing-in-chief, he argued:

"The story began January 14, 1981, in Uinta County. What happened on that day around three thirty in the afternoon? Two men showed up at the trailer home that [J] was living in. Those two men, Cecil Browder and Trenton Frith—*and I tell you Ladies and Gentlemen, that that was not an accident.* * * * " (Emphasis added.)

" * * * *I tell you that* [J] was a target from the minute that they walked into that door. * * * " (Emphasis added.)

" * * * There was Trenton Frith and Cecil Browder with a beer in their hands because they weren't there for drinks. They were there for another purpose and *don't believe it if they tell you it was anything else, because it's not so.* They had targetted [sic] [J] and they knew what was going to happen. * * * " (Emphasis added.)

" * * * Do you know what happened in the bathroom? More plan. More discussion. More firming up about what was going on. That's what happened in the bathroom. That's exactly what happened

in the bathroom." (No evidence had been introduced showing what happened in the bathroom. The prosecutor's comment in essence is manufacturing facts.)

" * * * Is that the kind of coy, little girl that's going to walk by with her towel and smile? No. They haven't done a good job of coming up with their story because that's not what [J] is."

" * * * They want you to believe that [J] came in, fondled Trenton, because Trenton says that's what happened, took the towel down, laid it on the bathroom floor and laid down and had sex with him right there. That's what they want you to believe. *It's not so and that's not the way it happened.*" (Emphasis added.) "*Now, I'm going to tell you the way it really happened.* This is the way it really happened. * * *" (Emphasis added.)

" * * * Now, they want you to believe, 'Yeah. We found one at the bar and I had to drag her out by the hair.' Ha, Ha, Ha, Ha. *It's not what happened. What happened is* the way that [J] told the story and that's what happened, the way [J] told the story." (Emphasis added.)

" * * * What you're hearing today is rare because the State usually doesn't have this good a case to present to you. We don't have the fortunate circumstances we now have, the corroboration. * * *"

" * * * So the idea is that from now on, if you're going to commit a rape, take a friend with you because then you'll be able to come in and the two of you will say you didn't do it. If you're going to commit rape, commit gang rape. That would be the moral of the story, if we were to let it be that way. * * *"

No objections to any of these statements were recorded. However, defense counsel, during his closing, pointed out to the jury that the prosecutor had failed to present it with evidence to support his bald assertions. Presumably this would have cured any plain error up to that point. It should further be noted that a reading of defense counsel's closing shows no improprieties which could be an invitation to statements which were forthcoming from the prosecutor during his rebuttal closing. Were we to consider only the prosecutor's closing to this point, plain error would probably not have been present.

But, in his rebuttal closing, the prosecutor clearly went over the boundary in making the assertions italicized:

" * * * But the officers have told you why they didn't do it and they are the epxerts [experts]. *I was satisfied* with their explanations and *I brought this before you,* so you look at it yourselves." (Emphasis added.)

"*I* prefer not to do this in rebuttal, but *I* feel, again that *I* have to and *I* feel in a certain sense that not only the State's witnesses *but I, myself, our credibility has been brought into question.* There is an inference that Joe Phillips sells drugs. There is an inference that Joe Phillips had a reason to come up here and say this, that the Prosecution had some kind of deal. *That's not so. That's absolutely not so. Now, if you believe that, then you have to throw me out as a liar* because *I* said it then and he said it and it's not so. Not so. * * *" (Emphasis added.)

" * * * Again, don't only throw Joe's story out the window, but *throw mine out* because that's what happened. * * *" (Emphasis added.)

" * * * *I* believe they knew that [J] was there and *I draw upon my own personal inferences* to say that, reasonable inferences, because of what *I* see happening. * * *" (Emphasis added.)

" * * * But that's what *I think,* that's what *I believe.* But *I also believe* [J] when she said it happened because I believe [J's] story. *I believed* [J's] story from the instant that they came to the door. *I thoroughly believe her story.*" (Emphasis added.)

" * * * *I* believe they had in mind that they were going to have intercourse with her and *I believe* that they didn't care whether it was by rape or by consent, but they did have that in mind. But *that's what I believe.* * * *" (Emphasis added.)

"* * * When you look at all the evidence, you will conclude as *I have*, that the two Defendants, Cecil Browder and Trenton Frith, did commit a first degree sexual assault on [J] on January 14, 1981." (Emphasis added.)

Again, no objections were recorded to these comments. However, that is not necessary where the error constitutes plain error. As provided in Rule 7.05, W.R.A.P., "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

■ In order to invoke the plain-error doctrine, several elements must first be established. First, the record must clearly show what occurred at the trial without resort to speculation. Second, the existence of a clear and unequivocal rule of law must have been violated in an obvious way. And finally, this violation must have adversely affected some substantial right of the accused. *Hampton v. State*, Wyo., 558 P.2d 504 (1977).

Clearly the first two elements are present here. The question we must resolve is whether the continuous disregard of the rules by the prosecutor was so great as to adversely affect the defendant's substantial right to a fair trial. We hold the answer is yes.

■ In determining whether plain error has occurred, the facts of the case must be viewed in light of the trial record as a whole and not as to whether any one single incident standing alone would be reversible. *United States v. Grunberger*, 431 F.2d 1062 (2nd Cir. 1970). This cumulative-effect approach has been applied in numerous cases. In particular, it was used by the United States Supreme Court in *Berger*, supra.

■ Reviewing the entire record in this case, it is clear that the fairness of appellant's trial was called into question by the prosecutor's conduct. It was a close case. The evidence of guilt is far from overwhelming. After making some marginally impermissible comments during his closing-in-chief, the prosecutor was perceptibly upset by defense counsel's astute observation during his closing that the prosecutor's comments were unsupported by the evidence amongst other telling observations about the State's case. So, in his rebuttal, he in essence told the jury that if you don't convict these people you are calling "me" a liar. While the occasional inclusion of phrases like "I believe" or "I think" in an argument is not prejudicial, *United States v. Murphy*, 374 F.2d 651 (2nd Cir. 1967); *United States v. Johnson*, 331 F.2d 281 (2nd Cir. 1964), the prosecutor here went overboard. His conduct was more extreme than that occurring in *Mayer v. State*, Wyo., 618 P.2d 127 (1980), and in *Six Feathers v. State*, Wyo., 611 P.2d 857 (1980).

Since prosecutors are very respected members of our society, it is impossible to know whether the conviction resulted from the jury's independent evaluation of the evidence or from the jury's desire not to call the prosecutor a liar. Since the case was so close and the prosecutor's improper comments so numerous, most particularly in rebuttal, and because there was no invitation to error from the defense counsel, we must hold that plain error was present.

Reversed and remanded for a new trial.

ROSE, Chief Justice, specially concurring.

The majority unnecessarily conclude that, had the prosecutor not committed error in rebuttal, this court would have condoned whatever misconduct he committed in his argument-in-chief. This is dicta, in view of the fact that the opinion reverses based on the prosecutor's rebuttal argument. I would not have condoned what the prosecutor said in his principal argument, but, in any event, I would have left the discussion out of the opinion since it is not necessary to the holding.

The record should reflect that I find the prosecutor's remarks made in both the argument-in-chief and in rebuttal to be misconduct, warranting reversal.

BROWN, Justice, dissenting.

I disagree with the majority's characterization of the prosecutor's comments during

summation as "impermissible." I would use the adjectives unprofessional and irresponsible. The comments were not, however, prejudicial in this context.

"* * * A reversal and remand for a new trial—because of prosecutorial misconduct—will not be ordered as punishment for a prosecutor's misdeeds, but only because such misdeeds denied the accused a fair trial. [Citations.] * * *" *Jones v. State*, Wyo., 580 P.2d 1150, 1154 (1978).

Here, the comments were so clumsy that it is more likely they eroded the State's case. Defense counsel here was sophisticated, experienced, highly regarded and very knowledgeable. The prosecutor, on the other hand, was trying his first major case. There is no support in the record for the majority's statement that "prosecutors are very respected members of our society," but reading the entire record lends some support to my characterization of the lawyers in this case. If defense counsel had thought for a moment that the prosecutor's comments were prejudicial to his client, he could have objected immediately. In that fortuitous event, the trial judge would have sustained the objection, administered an admonition at the bench or otherwise, and that would have been the end of that nonsense.

"* * * Objection should be made at the time of allegedly prejudicial comments so that the trial court will have an opportunity to take corrective action. [Citations.]" *Goodman v. State*, Wyo., 601 P.2d 178, 187 (1979).

Another purpose served by an objection would have been that the trial judge would have had an opportunity to give an instruction, thus possibly curing any error. Defense counsel, however, by not objecting, played out enough rope so that the prosecutor could "hang" himself—which he did, not at the trial level, as defense counsel probably expected, but in the appellate court. Defense counsel served his client well by not objecting.

Other courts usually require that defense counsel make an objection at the time improper comments are made. In *State v. Williams*, 228 Kan. 723, 621 P.2d 423, 431 (1980), the court held:

"The prosecuting attorney, in concluding his jury argument, said: 'I have no doubt in my mind that this defendant killed Pamela Parker and is guilty of the crime charged.' Defendant now contends that this was reversible error. We agree that the statement was improper. *State v. McClain*, 216 Kan. 602, 607, 533 P.2d 1277 (1975). A prosecutor should not inject his personal opinion into the argument. However, no contemporaneous objection was made, although defendant was represented by counsel at that stage of the proceedings, and it has long been our rule that reversible error cannot be predicated upon a complaint of misconduct of counsel in closing argument to the jury where no objection is lodged. [Citations.] * * *"

The Idaho Supreme Court took a similar view:

"* * * Our review of the record discloses misconduct by the prosecuting attorney in his closing argument. * * * The literal language of the prosecuting attorney need not be set forth herein, it is enough to say that his closing argument referred to facts which were not in evidence and urged conclusions on the part of the jury which would have been relevant to a charge of first degree murder. He portrayed the defendant as having deliberately planned and carried out the murder of her husband in a cold and calculated manner, continuing to fire shots into the body of her husband while he was in a helpless position and pleading for mercy. "While such statements might constitute prosecutorial license, if based on some peripheral view of the facts in a first degree murder case, the statements were improper in the case at bar were unsustained by the record. * * *

"Even if we assume, however, that the misconduct of the prosecutor in the case at bar is egregious, unprofessional and reprehensible, it alone is not sufficient to warrant reversal. [Citations.] * * *"

*State v. Griffiths*, 101 Idaho 163, 610 P.2d 522 (1980).

The Colorado Supreme Court summarized some of the improper comments by the prosecutor as follows:

"1. The prosecutor made several comments on the credibility of the defendant as a witness, specifically with respect to defendant's claim that he suffered a memory loss and could not recall the shooting incident." *People v. Sepeda*, 196 Colo. 13, 581 P.2d 723 (1978).

"2. The prosecutor appealed to the jury as the 'conscience of the community' and admonished them to convict defendant for the safety of the community."

The Court then held:

"The first two improprieties noted above were not objected to at trial, and we have held on numerous occasions that prosecutorial misconduct in closing arguments rarely, if ever, is so egregious as to constitute plain error, within the meaning of Crim.P. 52(b), so that we may consider it on appeal absent a contemporaneous objection. See, e.g., *People v. Plotner*, 188 Colo. 297, 534 P.2d 791; *People v. Simbolo*, 188 Colo. 49, 532 P.2d 962. We find no misconduct so flagrant as to constitute plain error." *People v. Sepeda*, supra, at 732.

The majority states repeatedly that the evidence was close in this case, and that the comments therefore were prejudicial; this is where I part company with the majority. Methinks the majority is trying to talk itself into something. This case is close only if the evidence produced by appellant is considered, evaluated and weighed in this court. That is to say, if the Supreme Court views the evidence as though it were the trier of fact, then it is a close case and the Supreme Court could go either way. This, of course, violates the most basic appellate rules, stated by the two following cases:

"In passing upon the sufficiency of the evidence to support a verdict of guilty, an appellate court will not weigh conflicting evidence nor consider the credibility of the witnesses; and it must view the evidence in a light most favorable to the prosecution * * *." *Harris v. State*, Wyo., 487 P.2d 800, 801 (1971).

" 'The oft-repeated rule by which we test the sufficiency of evidence on appeal of a criminal matter is that we examine and accept as true the evidence of the prosecution, leaving out of consideration entirely the evidence of the defendant in conflict therewith, and we give to the evidence of the prosecution every favorable inference which may reasonably and fairly be drawn therefrom. Stated another way—it is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State. [Citations.] * * * ' " *Grabill v. State*, Wyo., 621 P.2d 802, 803 (1980).

The majority sets out in great detail evidence favorable to appellant. It is quite obvious to me that the majority did in fact consider, weigh and evaluate defense evidence against the State's evidence, despite protestations to the contrary. For example, the majority said:

"Back at her trailer, J either invited or allowed appellant and Frith back, depending who was telling the story.

\* \* \* \* \* \*

"Other evidence was introduced that appellant went about bragging about having forced some girl to have sex with him. However, some damaging impeachment was done. * * *

"Some evidence was admitted to demonstrate that a forced entry had been made into the bathroom, but it was not particularly overwhelming. Moreover, no fingerprints were taken; and thus, there was nothing but J's testimony indicating that it was appellant and Frith who forced the bathroom door."

The majority's justification for delineating evidence favorable to appellant is that it was necessary to show that the evidence was close and that "The prosecutor's closing

may have tipped the scales." I read into that reasoning the suggestion that if it had not been a close case the comments by the prosecutor would not have been prejudicial, thus requiring a reversal. I say again the case is close because the majority evaluated and weighed the evidence favorable to appellant against the evidence of the State, contrary to appellate rules. This seems to be a circuitous and invalid way to find prejudicial error.

If appellate rules are followed, the critical evidence before this court is: Appellant threatened J, forced entry into J's bathroom, sexually assaulted her and then went around town bragging about it. There is nothing close about this case if those are the only facts considered.

## I

The prejudicial errors that the majority found in the State's rebuttal are that the prosecutor vouched for his own credibility, and that the prosecutor asserted his personal beliefs relating to matters in issue. This finding cannot be reconciled with our ruling in *Hopkinson v. State*, Wyo., 632 P.2d 79 (1981).

In *Hopkinson v. State*, supra, at 112–113, this Court quotes the prosecutor in his opening statement as saying:

"'* * * I don't see my roll [sic] in the courtroom as somebody who will misguide, misstate, mislead a jury to a false conclusion. * * *'"

With reference to this segment of the prosecutor's opening statement we said, "It is impossible to see prejudice there." *Hopkinson v. State,* supra, at 113. In *Hopkinson* the prosecutor in effect said, "I am credible." In the case here the prosecutor in effect said, "I am not a liar." In *Hopkinson* the prosecutor vouched for his credibility in the positive; here the prosecutor vouched for his credibility in the negative. If there is a distinction, it is without a legal difference. In *Hopkinson* the prosecutor was eloquent and used carefully chosen words; here the prosecutor was not and did not. Respective abilities of prosecutors are hardly a basis for a distinction.

In *United States v. Murphy*, 374 F.2d 651, 655 (2nd Cir. 1967) the court stated:

"As a general rule a prosecutor may not express his personal belief in the testimony of witnesses. *United States v. White*, 324 F.2d 814, 816 (2 Cir. 1963); *Greenberg v. United States*, 280 F.2d 472 (1 Cir. 1960). However, the stray inclusion of the phrase 'I think' in this portion of his argument hardly, if at all, constitutes an expression of his belief in the witnesses. It could not have been prejudicial, and it was not objected to below. [Citations.]".

In *United States v. Johnson*, 331 F.2d 281, 282 (2nd Cir. 1964), cert. denied 379 U.S. 905, 85 S.Ct. 196, 13 L.Ed.2d 178 (1964), the Court stated:

"No objection was taken to the Government's summation nor were any protective instructions sought. Although the prosecutor's statement that he 'vouched for' the credibility of certain government witnesses was improper, cf. ABA Canon of Professional Ethics # 15 (1963), it was not, at least absent objection, reversible error."

In *Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 323, n. 15, 2 L.Ed.2d 321 (1958), reh. denied 355 U.S. 967, 78 S.Ct. 529, 2 L.Ed.2d 542 (1958), the Court stated:

"Petitioner Lawn also contends that a statement made by the Government's attorney in his closing summation to the jury, saying, in pertinent part, 'we vouch for [Roth and Lubben] because we think they are telling the truth,' deprived him of a fair trial. No objection was made to the statement at the trial. The Government's attorney did not say nor insinuate that the statement was based on personal knowledge or on anything other than the testimony of those witnesses given before the jury, and therefore it was not improper. Cf. *Henderson v. United States*, 6 Cir., 218 F.2d 14, 19; *United States v. Holt*, 108 F.2d 365, 370; *Tuckerman v. United States*, 291 F. 958, 969. * * *"

The majority here stated: "While the occasional inclusion of phrases like 'I believe' or 'I think' in an argument is not

prejudicial, * * * the prosecutor here went overboard." "Occasional" suggests more than once. The majority does not say how many times a prosecutor may say "I think," nor should it. That is a fine line which is best drawn by the trial judge.

II

In the case here, the court said objections were not necessary "where the errors constitute plain error," but it said nothing about plain error in *Hopkinson*. Instead, it attached considerable significance to the fact that defense counsel did not always object to the prosecutor's comments.

"We agree with the trial judge where, as here, (1) the appellant's counsel did nothing to try and prevent the jury from hearing the questionable comments * *." *Hopkinson v. State*, supra, at 147.

This Court, as well as others, blows hot and cold on plain error. Courts agonize in trying to identify "that hazy line which divides harmless and plain error." *Jones v. State*, Wyo., 580 P.2d 1150, 1154 (1978). Decisions are made on a case by case basis without any solid guidelines. It would appear that the propensity of the Court weighs more heavily than any other factor. I think we should give greater weight to the discretion of the trial judge, who is in the superior position to determine if comments are prejudicial. A factor considered by the trial court and which should be considered by this Court is silence of counsel. If highly competent counsel does not object, that is at least some indication that his client is not being harmed. It is also some indication that the client is not being harmed when competent counsel, after cool reflection, still does not make a post conviction motion for a mistrial or for a new trial based on the prosecutor's comments. Both of those things happened here. Apparently the first time it dawned on appellant that he had been prejudiced was when he wrote his appellate brief.

The majority here also talks about cumulative error in conjunction with plain error:

"In determining whether plain error has occurred, the facts of the case must be viewed in light of the trial record as a whole and not as to whether any one single incident standing alone would be reversible. *United States v. Grunberger*, 431 F.2d 1062 (2nd Cir. 1970). This cumulative effect approach has been applied in numerous cases. In particular, it was used by the United States Supreme Court in *Berger,* supra. [*Berger v. United States*, 795 U.S. 78, 55 S.Ct. 629, 79 L.Ed. In 1314 (1935) ]."

In suggesting cumulative error the majority alludes to the prosecutor mentioning facts not in evidence. In *Hopkinson,* supra, the prosecutor in summation said:

"You remember that [Hopkinson] tried to bribe poor old J.R. Goo with loans and flattery and when that didn't work J.R. Goo was beaten up."

\* \* \* \* \* \*

"Hopkinson controlled the county attorney for years.

\* \* \* \* \* \*

"Hopkinson had been moving 'illegal items.'

\* \* \* \* \* \*

"Hopkinson knew exactly where the Vehar investigation stood because he had the information from the county attorney, his lawyer.

\* \* \* \* \* \*

"Hopkinson had Goo beaten up and controlled Gary Greenhalgh, Green's attorney."

The foregoing comments by the prosecutor were not in evidence in the *Hopkinson* trial. Defense counsel objected to some of these comments and asserted on appeal that these comments amounted to prejudicial error. Apparently the court in *Hopkinson* considered the foregoing comments so innocuous that they were not even mentioned in the opinion.

Courts resort to the doctrine of cumulative error when they have identified several errors but have misgivings about their prejudicial effect. If a court has a predilection

to find prejudicial error, it says that any single error standing alone may not be prejudicial but the cumulative effect of numerous errors was prejudicial to appellant and denied him a fair trial. On the other hand, if a court is predisposed to find harmless error, it says that cumulative error is a nebulous concept difficult to demonstrate, and that appellant has not demonstrated that the cumulative effect of the errors has been prejudicial.

Both explanations of cumulative error are superficial, uninspirational and totally unsatisfactory.

Whether remarks made by counsel in summation are prejudicial is a discretionary matter with the trial court. The trial judge is in a better position to determine what prejudicial effect impermissible statements have on the jury than the appellate court. *Hopkinson v. State*, supra, at 145.

> The trial judge here instructed the jury: "You are the exclusive judges of the facts and of the effect and value of the evidence, but you must determine the facts from the evidence produced here in Court. * * * As to any statement made by counsel in your presence concerning the facts of the case, you must not regard such a statement as evidence * * *."

We must assume that the jury followed the court's instructions. I would further assume that the jury had more intelligence and judgment than the majority seems to credit it with. The jury knows that the prosecutor believes in the State's case. The jury knows that the prosecutor and defense counsel are given to hyperbole. I would be surprised if a jury convicted because the prosecutor thought something. Juries are more intelligent, fair and sophisticated than that. The members of the jury are not marionettes, swayed to and fro by the fervid protestations of counsel. We trust juries with a person's life and property; and we must, therefore, credit juries with more discernment and trust them to follow the court's instructions by disregarding inept comments by counsel.

The result of this case is manifestly unfair to the trial judge. The trial court is being reversed on a matter that it did not act on, and was not given an opportunity to act on. The Bar might glean a message from this case that it is better to be silent than to object. Appellant in *Hopkinson,* supra, objected repeatedly and it profited him nothing. Appellant here did not object and the Supreme Court bailed him out. Appellant is the beneficiary of a special dispensation. He appeared here at a propitious time when the Court was in an uncharacteristic commiserative mood.

I would affirm.